THE SUSSEX MUTUAL INSURANCE COMPANY, PLAINTIFF-APPELLANT, v. HALA CLEANERS, INC. AND HAROLD FISHMAN, AND ESSESS REALTY CO., DEFENDANT-RESPONDENTS, AND ARCONE OIL COMPANY AND S. ZAENTZ, DEFENDANTS.

Argued May 23, 1977—Decided December 2, 1977.

*Mr. Samuel A. Gennet* argued the cause for appellant.

*Mr. Joseph Gordon* argued the cause for respondents Hala Cleaners, Inc. and Harold Fishman (*Messrs. Gordon and Kanengiser,* attorneys; *Mr. Gerald Kanengiser,* of counsel).

*Mr. John W. Taylor* argued the cause for respondent Essess Realty Co.

The opinion of the court was delivered by

CLIFFORD, J. Plaintiff, The Sussex Mutual Insurance Company (hereinafter Sussex), issued to defendant Hala Cleaners, Inc., t/a One Hour Martinizing (hereinafter Hala) a Special Multi-Purpose Policy. Defendant Harold Fishman was president of Hala. Under "Section I — Property Coverage" the policy insured Hala against direct loss of or damage to personal property by fire and other perils at premises located at 149 Meeker Avenue, Newark, which Hala leased from defendant Essess Realty Co. (hereinafter Essess). It also provided coverage under "Section II — Liability Coverage", for personal injury and property damage liability. On January 5, 1971, while the policy was in effect, the premises and contents thereof were severely damaged by fire. In its wake came this and other litigation.

First, Hala instituted suit in March, 1971, against Sussex seeking the appointment of appraisers to determine the value of its damaged property. Judge Herbert held that Hala was entitled under the fire coverage to have appraisers appointed, 115 *N. J. Super.* 11 (Ch. 1971), noting in the course of his opinion that "liability under the policy" was "disputed." *Id.* at 12. Next came Hala's suit, by complaint filed in January, 1972, against Sussex for payment of its claim under the fire coverage of the policy. Before that case came to trial Essess instituted an action in March, 1972, naming Hala, Fishman and others as defendants, in which it sought recovery for the damage to its property resulting from the same fire. In addition to charging the vari-

ous defendants with negligence, Essess alleged in its complaint that "Hala, by and through its agent, servant or employee, Harold Fishman, deliberately caused" the fire, on account of which it asked for punitive as well as compensatory damages. After some correspondence between Hala and Sussex, to which further reference will be made below, Sussex filed an answer on Hala's behalf in the Essess case in June, 1972 and obtained a stay of that suit pending the outcome of the Hala-Sussex case. [It is this action by Sussex with respect to Hala's defense of the Essess suit which claims our attention here.] Finally, Sussex commenced the instant action in the Chancery Division on August 4, 1972 for a judgment declaring that it is "not obligated [under the liability coverage] to defend the action instituted by Essess Realty Co. or to pay any judgment that may be obtained * * *."

This Chancery Division case was originally consolidated with the Law Division action in which Hala as plaintiff sought recovery under the fire insurance portion of the policy, and the two cases were pretried together in October, 1973. This was followed by a supplemental pretrial conference eleven days later. Thereafter, at the commencement of the Law Division case, the trial judge severed the instant matter. This entirely proper step permitted the Law Division trial to address the narrow question of Sussex's obligation to *pay* Hala under the fire coverage, leaving for later resolution the issue of Sussex's duty under the liability coverage to *defend* Hala in the Essess suit. The attorney for Essess was present at the commencement of the Hala trial on the policy and expressly agreed that he would be "bound by the jury's adjudication" of the several issues proposed to be submitted to it on special interrogatories directed to Sussex's defenses of arson and fraud.

The case in which Hala sought recovery for its damages from Sussex under the fire insurance then went to trial and resulted in a judgment in favor of the defendant insurance company. The jury made specific findings, as recorded in

its answers to the special interrogatories, as follows: (1) Hala, through Fishman, had "wilfully ignited" the property with the intent to burn it and recover for its loss; (2) the insurance policy was "suspended" on the date of the fire because of an "increase in hazard;" (3) Hala, through its owner, Fishman, wilfully attempted to defraud the insurance company; (4) Sussex had not waived its defenses of intentional setting of the fire and increase in hazard, and was not estopped from denying coverage; and (5) Hala had suffered no loss of earnings payable under the policy.

Thereafter the instant cause came on for trial.[1] It will be recalled that in this case Sussex sought a declaration that it was relieved of its duty under the policy to defend and indemnify Hala in the action instituted by Essess against Hala. The case was heard by the same judge who had presided over the earlier jury proceedings resulting in a judgment in Sussex's favor. The single issue, as framed by the trial judge, centered about "the defense of waiver or estoppel," Hala contending that "by virtue of Sussex Mutual having undertaken the defense of the case in Union County [the claim of Essess against Hala and others], they are estopped now to deny coverage under the liability policy * * *."

The trial judge viewed this rather narrow issue as having two parts, namely, whether Sussex's actions *prior* to the institution of Hala's suit on the fire portion of the policy afforded any basis for a finding of waiver or estoppel, and further, or alternatively, whether such a basis might be found in the insurance carrier's action in filing an answer on Hala's behalf to the Essess complaint. As to the first, the trial judge concluded that principles of *res judicata* compelled him to declare that no waiver or estoppel resulted from Sus-

---

[1]The trial court referred to this proceeding as "a continuation of" Hala's case against Sussex and the transcript is so captioned. In reality the court was addressing the previously severed Chancery Division phase of the case, as all parties recognized.

sex's actions prior to the commencement of Hala's suit, the jury having made specific findings favorable to Sussex on these issues — findings with which, as he specifically pointed out, the trial court agreed.[2] As to the second assertion, that a waiver or estoppel resulted from Sussex's "inaction or action" after Essess's suit against Hala had been instituted, again the trial judge found for the insurance company. He reasoned that by filing an answer and obtaining a stay the carrier had not undertaken to control the Essess suit on Hala's behalf but rather had simply attempted to "maintain the status quo of the Essess Realty suit, pending an adjudication as to whether or not they would be compelled to defend that suit and extend coverage to Hala Cleaners." Accordingly, the trial court entered judgment in favor of Sussex and against defendant in the chancery action. At the same time he denied Hala's motion to set aside the jury verdict in its suit on the fire insurance portion of the policy.

The Appellate Division, in an unreported opinion, affirmed the judgment in Sussex's favor in Hala's fire insurance case but reversed the judgment in the Chancery Division action, holding that the "control of the defense of the [Essess] action by Sussex without an adequate reservation of rights agreement estops Sussex from denying its obligation to defend and indemnify Hala Cleaners from the Essess claim." By petition and cross-petition for certification both Hala and Sussex sought review of these determinations. We denied Hala's petition and granted Sussex's cross-petition. 71 *N. J.* 527 (1976). We reverse.

---

[2]No one has raised any issue, either here or in the Appellate Division, with respect to the propriety of this ruling by the trial judge. We note in passing that collateral estoppel would have been the more appropriate basis for the ruling. See *Kram v. Kram*, 94 *N. J. Super.* 539 (Ch. 1967), rev'd on other grounds, 52 *N. J.* 545 (1968) for a discusson of the difference between *res judicata* and collateral estoppel. See also *State v. Gonzales*, 75 *N. J.* 181 (1977).

The only substantial issue presented[3] is whether, as Hala claims, Sussex "had waived any rights it had and was estopped by virtue of * * * having undertaken the defense of the case" on behalf of Hala. The facts relied on in support of this contention are set forth in the Appellate Division's opinion as follows:

Upon being served with the summons and complaint [in the Essess suit against Hala], Hala Cleaners forwarded the suit papers to Sussex for defense. Sussex obtained an extension of time for filing an answer and then sent the following letter, dated April 21, 1972, to Hala Cleaners:

I have obtained an extension of time from the attorneys for the plaintiff on behalf of Hala Cleaners until May 15, 1972, without prejudice to our rights to determine the coverage question and the necessity for us to defend the action.

In view of the facts in the suits presently pending, it is my opinion that a Declaratory Judgment action should be filed, to determine the relative positions between Hala Cleaners, Inc. and Sussex Mutual Insurance Company.

Do you want to file an action or do you want me to do it?

Hala Cleaners replied under date of May 4, 1972, as follows:

In response to your letter of April 21, 1972, please be advised that Hala Cleaners, Inc. has no intention of instituting declaratory judgment action.

Its position is that the company is obligated to defend and should therefore file an answer.

Sussex filed an answer to the complaint and on August 4, 1972 instituted these proceedings in the Chancery Division * * *.

Countering this estoppel argument Sussex points out that it simply filed an answer and did not otherwise undertake to control the defense. In addition the carrier contends that

---

[3]The Appellate Division ruled that it was "unnecessary to pass on [Sussex's] contention" that "it was error for the trial judge to refuse to permit an amendment to the pretrial order so as to enable it to assert as a further defense in the Chancery proceedings the "Care, Custody and Control" exclusion of the policy. Certification was not sought on that issue and we do not reach it in view of our holding that Sussex is not estopped to deny Hala a defense. The policy provisions no longer play any part in the claim of Essess against Hala.

the allegations in the Essess suit against Hala, wherein the defendant was charged with negligence, gross negligence, and intentionally setting the fire, made it impossible for Sussex to defend Hala "honestly and with complete faith for the insured"—this because if the fire were caused negligently, there would be coverage, whereas if it were set by the insured intentionally, there would not. Therefore, says Sussex, it followed one of the acceptable procedures prescribed by this Court in *Burd v. Sussex Mut. Ins. Co.,* 56 *N. J.* 383, 391 (1970):

> Whenever the carrier's position so diverges from the insured's that the carrier cannot defend the action with complete fidelity to the insured, there must be a proceeding in which the carrier and the insured, represented by counsel of their own choice, may fight out their differences. That action may, as here, follow the trial of the third party's suit against the insured. Or, *unless for special reasons it would be unfair to do so, a declaratory judgment proceeding may be brought in advance of that trial by the carrier or the insured, to the end that the third-party suit may be defended by the party ultimately liable.* [Emphasis added.]

In agreeing with Hala's position the Appellate Division relied on this Court's decision in *Merchants Ind. Corp. v. Eggleston,* 37 *N. J.* 114 (1962), wherein the carrier was held to have waived its right to disclaim after having controlled the preparation for and defense of a third party's action for damages. The *Merchants* court recognized that "the defense of an action against the insured is incompatible with a denial of liability unless the carrier has reserved the issue of its liability by appropriate measures." 37 *N. J.* at 126. Here, the court below determined that Sussex's letter to Hala, inviting the latter to institute proceedings for a determination of the "relative positions" of insured and insurer, fell "far short of fairly informing Hala Cleaners of its option to accept or reject the offer to defend under a reservation of rights"; hence the "appropriate measures" had not been taken by Sussex to reserve its rights under the policy.

In granting such binding effect to what it perceived as the absence of a non-waiver agreement or reservation of rights, under the circumstances of this case, the Appellate Division fell into error. We emphasize "under the circumstances of this case" because we have no intention of disturbing the rule restated in *Merchants* and explicitly acknowledged in this jurisdiction for almost fifty years, to the effect that once a carrier undertakes to defend, it is estopped to deny coverage. *E. g., Horn v. Commonwealth Cas. Co.,* 105 *N. J. L.* 616 (E. & A. 1929); *Cook v. Preferred Acc. Ins. Co.,* 114 *N. J. L.* 141 (E. & A. 1935); *Kabinski v. Employers' Liab. Assur. Corp.,* 123 *N. J. L.* 377 (E. & A. 1939); *Ambrose v. Ind. Ins. Co. of N. Am.,* 124 *N. J. L.* 438 (E. & A. 1940); *Williams v. Bituminous Cas. Corp.,* 51 *N. J.* 146 (1968). That salutary rule retains its full vigor but it is inapplicable here because the essential ingredient of an undertaking to defend is missing.

Sussex's action in filing an answer on Hala's behalf and obtaining a stay amounted to no more than what the trial judge called it: maintenance of the status quo of the Essess suit pending an adjudication of the coverage issue. In no sense can Sussex be deemed to have controlled the defense of the Essess claim. It employed no defensive measures beyond the filing of a responsive pleading. This served to protect the insured's interest as well as the carrier's and was an acceptable way of "playing safe." See *United States Cas. Co. v. Home Ins. Co.,* 79 *N. J. Super.* 493, 502 (App. Div.), certif. den., 41 *N. J.* 128 (1963).

Furthermore, these minimal defensive steps were taken within the context of Hala's awareness early on of the fact that liability under the policy was in sharp dispute. Judge Herbert's opinion, in which he ruled on the appraisal issue four and a half months after the fire, noted as much. 115 *N. J. Super.* at 12. Before the appraisal proceedings were even completed, Hala sued for payment under the fire insurance coverage. Sussex's answer to that suit, while not specifically setting up the defense of arson, did assert fraud,

wilful concealment and misrepresentation of material facts.[4] During all of the time from shortly after the fire up to the present Hala has been represented by its own attorney (see *Am. Leg. Hosp. v. St. Paul Fire Ins. Co.*, 106 *N. J. Super.* 393 (App. Div. 1969) recognizing the significance of this factor). In short, the relationship between the insured and insurer has been an adversary one almost from the beginning. That a coverage question existed at the time the Essess suit was filed was manifest. Sussex's attorney made explicit reference to that critical issue in his letter to Hala upon receipt of the Essess suit papers ("I have obtained an extension of time [to file an answer] * * * without prejudice to our rights to determine the coverage question * * *.") and indicated an intention to seek judicial resolution thereof should Hala not do so itself ("[A] Declaratory Judgment action should be filed to determine the relative positions between" Hala and Sussex.). Hence it can hardly be said that Hala was in any way led to believe that Sussex's filing of an answer to the Essess suit amounted to a retreat by the carrier on the coverage question. That Hala well understood that its relationship with the carrier was an adversary one was made clear by its joining in the application for a stay of the Essess case, the only purpose of which would be to delay the trial thereof until the coverage question had been resolved.

In addition Sussex was confronted with the problem created by separate counts in the Essess complaint charging Hala with negligence and deliberately setting the fire. As noted heretofore, the liability policy furnished coverage for the former and not the latter. This dilemma calls, in the interest of "elementary fairness," for "a proceeding in which the differences between the insurer and the insured may be tried." *Williams v. Bituminous Cas. Co., supra,* 51 *N. J.* at 149. That was exactly the function of the present suit,

---

[4]This answer was served on the attorneys for Hala almost three weeks before the Essess suit was started.

brought promptly after Sussex had answered the Essess com-
plaint and only after a stay of that case had been obtained.
Under these circumstances the declaratory judgment technique
recommended by *Burd v. Sussex Mut. Ins. Co., supra,* was
ideally suited to resolution of the coverage issue and was
properly employed. See *Rova Farms Resort v. Investors Ins.
Co.,* 65 *N. J.* 474, 507, 509–10 (1974) (concurring opinion)
and authorities cited therein.

The Essess case has remained in limbo, awaiting determina-
tion of this dispute between the carrier and the named in-
sured. We now dissolve the stay of its prosecution. The judg-
ment below is reversed and the trial court's judgment in
favor of plaintiff, to the effect that Sussex is not obligated
to defend Hala or to pay any judgment rendered against
Hala in the Essess suit, is reinstated.

*For reversal*—Chief Justice HUGHES and Justices MOUN-
TAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and
HANDLER—7.

*For affirmance*—None.