184 N.J. Super. 131 (1982)
445 A.2d 428
AMERICAN HANDLING EQUIPMENT, INC., A NEW JERSEY CORP., PLAINTIFF-RESPONDENT,
v.
T.C. MOFFATT & CO., A CORPORATION, DEFENDANT-RESPONDENT, AND THE HARTFORD INSURANCE COMPANY, A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1981.
Decided April 5, 1982.
*133 Before Judges MICHELS, McELROY and J.H. COLEMAN.
Kenneth J. Fost argued the cause for appellant.
Leonard Rosenstein argued the cause for respondent T.C. Moffatt & Co. (Feuerstein, Sachs & Maitlin, attorneys).
Richard H. Foster argued the cause for respondent American Handling Equipment, Inc. (Ryan, Foster & Bonanno, attorneys).
The opinion of the court was delivered by McELROY, J.A.D.
In this case the trial judge, in a written opinion, held that defendant The Hartford Insurance Company (Hartford) had to defend its putative insured, American Handling Equipment Inc. (American) and to indemnify American against any judgment in a suit brought against it by Leonard Pringle arising out of accident and injuries occurring September 19, 1975. Hartford, which concededly issued no policy covering Pringle's accident, *134 was held to be estopped from denying such obligations to American under circumstances where Hartford had inadvertently filed an answer to Pringle's suit but disclaimed upon discovering, four months later, that it had no policy covering Pringle's accident. The trial judge ruled that the principles of Merchants Indem. Corp. v. Eggleston, 37 N.J. 114 (1962), required such a result. We disagree and reverse.
The facts are not complex but were not fully developed at trial. The gaps left in the factual pattern will appear in the following, which represents our best attempt to compile that which transpired. Early in 1975 American, dissatisfied with its insurance costs, requested defendant T.C. Moffatt & Company (Moffatt) to survey its insurance needs and to obtain all necessary coverage at what was hoped would be reduced premiums. Moffatt, through its employee Michael Hayes, arranged to have Hartford cover American for workers' compensation and automobile insurance but also sought a special multi-peril policy (SMP) covering fire, inland marine and comprehensive general liability. For this latter policy Hayes, in June 1975, dealt with William Gillen of Hartford's SMP department. Gillen advised Hayes that Hartford declined to write an SMP for American but that he would submit separate applications to various Hartford departments to see if they would separately underwrite the risks ordinarily covered in an SMP. Hartford did issue an automobile policy and one covering American's workers' compensation liability.
Pringle's accident and resulting suit would have been covered by a general liability policy. Hartford never issued any such policy to American. Moffatt obviously was aware that this was so because it attempted, without success, to obtain such coverage from Monarch Insurance Company in November 1975 and from Crum & Forster Insurance Companies in October 1975. The latter insurer issued a binder on the risk which was cancelled on November 4, 1975. Apparently this binder was not in effect on September 19, 1975, the date of Pringle's accident. The trial judge found as a fact, and we agree, that Moffatt, as *135 American's broker, did not rely on Hartford to issue a general liability policy. American obviously assumed that Moffatt had obtained all of the requested coverages and Moffatt did nothing to advise it that this was not so.
Pringle's accident of September 19, 1975 was reported to Moffatt by American on November 17, 1975. Moffatt did not report this accident to Hartford. Some time before March 31, 1977 American was served with Pringle's complaint in an action filed in New York. American's operations manager mistakenly forwarded the complaint to a former broker, who returned it to American on March 31, 1977. American then forwarded the complaint to Moffatt who, on April 4, 1977, sent it to Hartford listing a nonexistent policy number of 13C707-467. The complaint was received by Hartford April 8, 1977. Hartford retained New York counsel who, on July 11, 1977, filed an answer and cross-claim for American. There is no evidence as to when Hartford forwarded the matter to its New York attorney or as to what transpired between April 8, 1977 and the first week in August 1977 when Hartford became aware that it had no policy covering the Pringle claim.
In early August 1977 American received a telephone call from Hartford advising that no coverage existed for the Pringle suit. This call was followed by a letter to American, dated August 8, 1977, in which Hartford noted that it had no policy bearing the number 13C707-467, the number used by Moffatt in forwarding the Pringle complaint, and that Pringle's "slip and fall" accident was not covered under the automobile policy it had issued to American. Hartford instructed American to have its proper liability carrier assume the defense of Pringle's suit. American eventually substituted its own attorney on July 17, 1978. There is no evidence that this delay of almost one year from the date of Hartford's disclaimer to the substitution of American's attorney was caused by Hartford or whether it was brought about by agreement between American and Hartford. It is sufficient, in the circumstances, to note that American does not here complain of this passage of time as prejudicial to its interests. The *136 matter was tried below, and presented here, on the question of whether Hartford was liable to American by reason of its filing of answer and the four-month delay in disclaiming coverage.
In February 1979 American was served with another summons and a third-party complaint in an action pending in the United States District Court for the District of New Jersey. This action arose out of an injury to one J.N. Rush. American forwarded these papers to Moffatt who, in turn, sent them to Hartford. Hartford, now awake to the fact it did not cover, refused to defend and American retained its own counsel to do so.
On May 15, 1978 American sued Moffatt and Hartford, seeking a declaratory judgment. American contended that Hartford was obliged to defend and indemnify it for the Pringle suit. It also asserted that Moffatt undertook, as American's broker, to obtain the necessary insurance coverage but failed to do so and sought to hold Moffatt liable for all losses thereby incurred. Hartford's answer denied coverage and crossclaimed against Moffatt for common law indemnification. Moffatt's answer was in the nature of a denial of fault. Its crossclaim against Hartford asserted that Moffatt was Hartford's agent, that Hartford was primarily negligent, and alleged that Moffatt, as one only secondarily or constructively liable to American, was entitled to be indemnified by Hartford.
In April 1979 American amended its complaint to assert the liability of Hartford and Moffatt for any damages incurred in the Rush suit, a products liability case. The answers and crossclaims of Hartford and Moffatt were similar to those filed in response to the initial complaint.
The trial judge's letter opinion held, as to the Pringle matter, that although there was no policy issued by Hartford, the principles of Merchants Indem. Corp. v. Eggleston, supra, were "dispositive" of Hartford's liability to American because Hartford could not disclaim once it filed answer and "undertook to investigate and litigate this claim." The judge held Hartford *137 estopped to deny coverage but made no specific determination as to whether a showing of actual prejudice to American was necessary to invocation of that principle. It is implicit in the decision below that the trial judge felt prejudice was to be presumed. The trial judge further found Hartford had no claim for indemnification against Moffatt.
With respect to the Rush matter, the trial judge held that Hartford was not liable because there never was any policy issued by Hartford, and it promptly disclaimed and returned the Rush suit papers. The judge held that Moffatt knew it had failed to obtain the proper coverage for its client American, did not rely on Hartford to do so, and was liable to American for negligence in failing to procure the insurance coverage it had undertaken to provide.
Hartford brings this appeal, contending that the trial judge erred in holding it estopped and, in any event, Moffatt should be obliged to indemnify Hartford. American filed no cross-appeal. Moffatt filed a cross-appeal from the judgment imposing liability upon it to American for the Rush matter and the denial of indemnification rights sought by Moffatt against Hartford in that case. Moffatt subsequently withdrew its cross-appeal, thereby obviating any need to consider its liability in the Rush claim and suit. Thus, the only issues here presented are those raised by Hartford's appeal. By reason of our disposition of Hartford's first contention there is no purpose to any discussion of its claim of indemnity against Moffatt.
We are constrained to observe, preliminary to our discussion of Hartford's first contention, that the evidence is clear, and we agree with the trial judge's determinations, that Moffatt acted in the circumstances as broker for American, did not attempt to utilize its agency relationship with Hartford to bind Hartford to coverage, and did not rely upon Hartford to provide the coverage sought for general liability. These matters were resolved below and not appealed by American or Moffatt. Thus, we need not address any issue as to Hartford's liability, respondeat *138 superior, for any failure of Moffatt to bind Hartford to the general liability coverage sought by American of Moffatt. We also note that despite the fact Moffatt neglected to obtain a general liability policy from Hartford and, under the evidence, knew of its failure to do so, Moffatt was not held liable in any degree to American for such neglect in the Pringle matter. The opinion does not discuss this issue, presumedly, because the court felt that the imposition of liability on Hartford on estoppel grounds mooted that question. American did not appeal and Hartford does not raise the issue of the prospect of Moffatt's joint liability to American. Such a consideration is not, therefore, a subject of our concern.
Under the facts presented here Hartford's first notice of Pringle's claim occurred when Moffatt forwarded the Pringle suit papers to Hartford utilizing an apparently nonexistent policy number. For reasons not explained in the record, Hartford took four months to determine that it had issued no general liability policy to American and had no policy bearing the number used by Moffatt. In the interim it filed answer to Pringle's complaint.
The trial judge's view was that Eggleston, supra, required Hartford to be liable to American because Hartford, without reservation of rights, "undertook to investigate and litigate this claim." The judge held that "[u]nder our law [Hartford] cannot disclaim having once done so...." We are obliged to observe initially that this case does not involve actual litigation of Pringle's claim and that the trial judge's contrary conclusion was too broad. All that appears from the proofs is that Hartford filed an answer, an act that benefited American's interest (as well as Hartford's assumed interests). There is no evidence that Hartford took any other defensive steps during the four months it held its hand on the matter. Although we are disturbed by the lack of evidence as to why, after receipt of the summons and complaint, Hartford required four months to discover the absence of a policy, the record is devoid of demonstration that any actual prejudice was occasioned during such *139 period, and American did not, and does not here, contend that actual prejudice ensued.
We observe that the mere filing of an answer did nothing but maintain the status quo of the Pringle suit and was a benefit to American since it avoided the prospect of default and the labors frequently necessary to set aside such imposed judgment. It is a practical step and has heretofore been wisely regarded, albeit in other circumstances, as merely "playing safe" in the mutual interests of the carrier and its putative insured. Sussex Mut. Ins. Co. v. Hala Cleaners, Inc., 75 N.J. 117, 125 (1977); United States Cas. Co. v. Home Ins. Co., 79 N.J. Super. 493, 502-503 (App.Div. 1963), certif. den., 41 N.J. 128 (1963). In these circumstances we see no reasonable basis to presume prejudice nor do we discern in our case law any requirement that we do so.
It is clear that a carrier who has issued a policy, by its later conduct may, for equitable reasons, be refused the right to assert an exclusion or the absence of specific coverage. Our courts, over the years, have repeatedly so held. Horn v. Commonwealth Cas. Co., 105 N.J.L. 616 (E. & A. 1929); Cook v. Preferred Acc. Ins. Co., 114 N.J.L. 141 (E. & A. 1935); O'Dowd v. United States Fid. & Guar. Co., 117 N.J.L. 444 (E. & A. 1937); Ambrose v. Indemnity Ins. Co. of N. Am., 124 N.J.L. 438 (E. & A. 1940); Merchants Indem. Corp. v. Eggleston, supra; Sussex Mut. Ins. Co. v. Hala Cleaners, Inc., supra.[1]
*140 All of the foregoing cases, with the exception of Sussex Mut. Ins. Co. v. Hala Cleaners, involved situations where the carrier actually controlled the defense of a suit (sometimes to the point of adverse judgment) precluding the insured from exercising any control over important phases of preparation and presentation of the defense of the case. They were cases where the carrier's handling of the defense reached the point, noted in Eggleston, where the course could not be rerun and it would have been futile "to prove or to disprove that the insured would have fared better on his own." 37 N.J. at 129. It is in such circumstances that the observation made in O'Dowd, supra, that a showing of prejudice to the insured is "beside the point," can be said to be founded upon reason and good purpose and a conclusive presumption of prejudice should be invoked.
Recently our Supreme Court, in Griggs v. Bertram v. Franklin Mut. Ins. Co., 88 N.J. 347, 356 (1982), restated the underlying reason for estoppel of an insurer who controls the defense of a suit and also the grounds for estoppel where an insurer assumes control of a claim prior to the filing of a claim:
The rationale behind estoppel in this context is that once the insurer has acknowledged the claim and assumes control of the defense, the insured is justified in relying upon the carrier to protect it under its policy and to be *141 responsible for any judgment against it. See Eggleston, supra, 37 N.J. at 127. The insured's justifiable reliance arises from the insurer's contractual right to control the defense under the policy. In assuming this contractual right of control, the insurer preempts its insured from defending itself. If the insurer could later repudiate its responsibility and ultimate liability under the policy, it would in effect have left its insured defenseless or seriously hampered in its ability to protect itself. That resultant inequity is a necessary ingredient of an estoppel.
The same reasoning has impelled the conclusion that a carrier may be estopped if it assumes control of a case prior to the filing of a complaint with knowledge of facts on which to disclaim coverage but without any reservation of the right later to do so. Sneed v. Concord Ins. Co., 98 N.J. Super. 306, 320 (App.Div. 1967); Hanover Ins. Group v. Cameron, 122 N.J. Super. 51, 65-66 (Ch.Div. 1973). In each of these situations  the control of a case before litigation and the assumption of a defense after litigation  the conduct of the insurer forecloses independent or parallel action by the insured to defend itself. In either situation the insured is effectively precluded from acting in its own interest under the policy. Hence, an estoppel properly bars the carrier from later asserting it had no responsibility to protect the insured under the policy.
It is to be noted that in Griggs, in the cases cited in the above quotation, and in the cases heretofore referred to in this opinion, there was in each case an underlying policy. Estoppel was in each case used to prevent the operation of an exclusion or to extend coverage. Here there never was a policy. There is in this jurisdiction some authority to employ an estoppel to create a contract of insurance where none existed. White v. Austin, 172 N.J. Super. 451 (Cty.D.Ct. 1980). We decline, however, to enter that legal thicket in order to determine whether a contract of insurance, which like any other contract requires consideration and other usual elements of such a contract, can or should be created by estoppel because, even assuming that an insurance contract can be so fashioned, in order to invoke that doctrine "undoubtedly prejudice is an essential ingredient." Eggleston, supra at 129.
Granted, in some cases prejudice has been presumed but those cases, as previously noted, have involved more than merely filing an answer. The imputation of prejudice is not an absolute rule.[2] *142 The conduct of the carrier giving rise to estoppel must constitute "a material encroachment upon the rights of an insured to protect itself by handling the claim [or suit] directly and independently of the insurer" before the presumption of prejudice can arise. Griggs, supra, at 359 (Emphasis supplied). Griggs demonstrates, as does Sneed v. Concord Ins. Co., 98 N.J. Super. 306, 319 (App.Div. 1967), that this requirement applies whether the conduct of the carrier which invokes estoppel occurs in the claim stage or after suit is filed. Sneed observes:
No sensible reason for the distinction suggests itself in principle. The difference is one of degree of invasion of the insured's rights, not of kind. Any invasion, if substantial, should suffice without the need for particularized establishment of prejudice. [Id., emphasis supplied]
In the circumstances of this case, and even if the rebuttable presumption, suggested in Griggs' footnote 3, be applied, we discern no logical basis to view Hartford's filing of an answer and the four-month delay to disclaim as compelling imposition of liability upon Hartford. In the circumstances, this conduct cannot be realistically viewed as a material or substantial invasion of American's right to control defense of Pringle's suit. American does not assert the answer was improperly drawn thereby causing it legal difficulty in its eventual handling of its defense. The reasoning used in Sussex Mut. Ins. Co. v. Hala Cleaners, Inc. applies here. There it was observed:
Sussex's action in filing an answer on Hala's behalf and obtaining a stay amounted to no more than what the trial judge called it: maintenance of the status quo of the Essess suit pending an adjudication of the coverage issue. In no sense can Sussex be deemed to have controlled the defense of the Essess *143 claim. It employed no defensive measures beyond the filing of a responsive pleading. This served to protect the insured's interest as well as the carrier's and was an acceptable way of "playing safe." See United States Cas. Co. v. Home Ins. Co., 79 N.J. Super. 493, 502 (App.Div.), certif. den., 41 N.J. 128 (1963). [75 N.J. at 125.]
Moreover, the equities of the matter call for imposition of liability on Moffatt for any loss occasioned to American by Pringle's suit. Moffatt is the cause of American's problems. It was Moffatt rather than Hartford who led American to believe for four months that it was covered by general liability insurance with Hartford. Moffatt during this time knew it had not placed such insurance with Hartford and had unsuccessfully attempted to do so with Monarch Insurance Company and the Crum & Forster Insurance Companies. Realistically viewed, it was Moffatt who authored what appears to be a typically bureaucratic imbroglio (Hartford's filing answer) by forwarding to Hartford Pringle's suit papers when Moffatt knew no policy existed and did so designating a nonexistent policy number.
Furthermore, estoppel requires reliance. American never dealt directly with Hartford until Hartford's phone call disclaiming coverage. American's sole contact with Hartford up to that point was through Moffatt, its own broker, who knew no general liability coverage existed with Hartford. American may have relied on its broker but the broker did not rely on Hartford. When American on November 17, 1975, some 16 months before suit was served on it, notified Moffatt of Pringle's accident, Moffatt did not, in turn, notify Hartford. It did not do so for obvious reasons. It had just cancelled Crum & Forster's binder as of November 4, 1975 and still had not placed the required insurance. Its application to Monarch Insurance Company for general liability insurance, undated, but obviously prior to November 19, 1975, only listed Hartford as insurer of American for workers' compensation and automobile insurance. Monarch on November 19, 1975 sent Moffatt a letter quoting an annual premium of $54,120 for American's general liability coverage. The facts unequivocally demonstrate no ground for Moffatt, as *144 American's broker, to rely upon Hartford for coverage, and since American only acted through Moffatt there is no basis to find that American relied on Hartford for general liability coverage. To the extent Moffatt seeks to assert its own reliance on Hartford's action, such claim is clearly frivolous.
Moffatt was found liable by the trial judges to American for the Rush suit expense and for indemnity, if any such need arises. For the same reasons, and to the same extent, it, rather than Hartford, is liable to American as to the Pringle suit. Accordingly, insofar as the trial court's judgment of December 3, 1979 imposes liability upon Hartford to defend the Pringle suit, to indemnify American in that matter and to pay American's counsel fees of $3,105, it is reversed. The matter is remanded for modification of that judgment to impose upon Moffatt, and to American's benefit, those same obligations in the Pringle matter.
NOTES
[1] Some of the earlier cases seem to have employed a curious "waiver-estoppel" doctrine and evince a failure to distinguish between the two terms and the requisites of these ordinarily separate and distinct principles. In Eggleston, however, former Chief Justice Weintraub correctly observed:

Analytically, a distinction should be drawn between (1) cases in which the loss is not within the policy coverage and (2) cases in which the policy does cover but fraud in the inception or a breach of the policy is claimed.
Where the policy does not cover the loss, it seems inaccurate to speak of a "waiver" since there is nothing to waive. Rather, the relevant thought is "estoppel," and undoubtedly prejudice is an essential ingredient. [37 N.J. at 129.]
The Chief Justice noted that where waiver is the applicable principle the carrier is held to have voluntarily relinquished his right "to call off the deal," and in such case neither "consideration nor detriment [to the insured] is necessary to support the finality of choice." Id. at 131. Analysis of the earlier cases, holding that a carrier in a noncoverage situation (by reason of an exclusion not timely raised) had "waived" the exclusion and was thus "estopped," suggests that this confusion of terms may be the source of the "conclusive presumption" of prejudice approach. If the courts were really applying principles necessary to waiver, detriment or prejudice to the insured was not necessary. Thus, in O'Dowd v. United States Fid & Guar. Co., supra at 452, the question of prejudice was deemed to be "beside the point," and in other cases, noted in Eggleston, "prejudice was assumed without any discussion of the subject." Id. at 129.
Our most recent case only speaks in terms of estoppel and requires that there be a "material" invasion of an insured's right to protect itself before a presumption of prejudice may arise. Griggs v. Bertram v. Franklin Mut. Ins. Co., 88 N.J. 347, 359 (1982).
[2] In footnote 3, at 362, the court in Griggs observed:

We recognize, of course, that there are many variables that usually must coalesce to raise an estoppel based upon a conclusive presumption of prejudice to the rights of the insured. There may be other situations, involving, for example, a short delay before the insurer discloses its intentions regarding coverage which may not call for the conclusive imputation of prejudice. We note, without attempting to fashion a more complete determination, that it may be appropriate in such other contexts not to impute conclusive prejudice but to impose a rebuttable presumption of prejudice which the insurer must disprove in order to overcome the bar of estoppel.