265 N.J. Super. 148 (1993)
625 A.2d 601
RELIANCE INSURANCE COMPANY, PLAINTIFF,
v.
ARMSTRONG WORLD INDUSTRIES, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 12, 1993.
*149 Eisenstat, Gabage & Berman, attorneys for plaintiff (Charles W. Gabage, counsel).
*150 Hangley, Connolly, Epstein, Chicco, Foxman & Ewing, attorneys for plaintiff (Steven R. Fischer, counsel; Regina A. Vogel and Deborah Weinstein, on the brief).
Cohen, Shapiro, Polisher, Sheikman and Cohen, attorneys for defendant (Judah I. Labovitz, counsel; Mark S. Herr, on the brief).
Covington & Burling, attorneys for defendant (Robert N. Sayler, counsel; Philip D. Gorlick, on the brief).

OPINION
KLEINER, J.S.C.
This opinion is necessitated by a series of motions which were filed and orally argued subsequent to the initial interlocutory decision of this court, dated July 7, 1992. 259 N.J. Super. 538, 614 A.2d 642 (Law Div. 1992). That decision, which fully reviewed the factual background of this litigation, and therefore need not be repeated, focused upon (1) the identification of insurance agreements between Reliance Insurance Company (hereafter Reliance), and Armstrong World Industries (hereafter Armstrong); (2) the interpretation of insurance policy terminology pertinent to the nature and extent of the insurance coverage afforded by the identified policies.[1]
*151 On September 23, 1992 our Supreme Court rendered its opinion in State v. Signo Trading International, Inc., 130 N.J. 51, 612 A.2d 932 (1992). That decision specifically overruled portions of Broadwell Realty Services, Inc. v. Fidelity and Cas. Co., 218 N.J. Super. 516, 528 A.2d 76 (App.Div. 1987). As this court had substantially relied on Broadwell, Id. in its interpretation of the applicability of the "owned-property exclusion" clause of the Reliance policies, Reliance filed a motion for a modification of this court's interlocutory ruling.[2]
In the original opinion of this court, the "owned-property exclusion" within the Reliance comprehensive general liability insurance policies was construed.
The specific language of that particular exclusion provides:
This policy does not apply ... to injury to or destruction of (1) property owned, occupied by or used by or rented to the insured, or (2) except with respect to liability under sidetrack agreements and the use of elevators or escalators, property in the care, custody or control of the insured, or (3) any goods or products manufactured, sold, handled or distributed or premises alienated by the named insured or work completed by or for the named insured, out of which the accident arises.[3]
Liability insurance affords coverage for losses or liabilities on account of property damage sustained by parties other than the insured itself. CPS Chemical Co. v. Continental Ins. Co., 222 N.J. Super. 175, 186, 536 A.2d 311 (App.Div. 1988); McNeilab Inc. v. North River Ins. Co., 645 F. Supp. 525, 537-39 (D.N.J. 1986), aff'd 831 F.2d 287 (3rd Cir.1987).
The distinction between the purpose of general liability insurance, and insurance policies providing the insured first party coverage for losses sustained on its own property, is clearly *152 observable by an exclusionary provision within the liability policy commonly known as the "owned-property exclusion." As noted in Broadwell Realty v. Fidelity & Cas. Co., supra, 218 N.J. Super. at 518, 528 A.2d 76,
The obvious purpose of this language is to exclude from the insurer's indemnification obligation claims by the insured based upon damage or loss to its own property ... the [general liability] policy is not designed to afford first party coverage.
The inclusion within a policy of liability insurance of an exclusion for "premises alienated by the named insured" is designed to extend the exclusion to claims by subsequent owners of property previously owned by an insured.
In Hatco Corp. v. W.R. Grace & Co., 801 F. Supp. 1334 (D.N.J. 1992), the court was called upon to resolve several motions between a predecessor and successor in title to an industrial site affected by substantial pollution and their respective insurers. Many of the issues originally addressed by this court in its initial opinion were also addressed in Hatco Corp., Id. Of significance, however, is a discussion by the court as to the effect of an "owned-property exclusion" clause. On that particular point, the court stated:
On August 21, 1978, Grace sold the Fords facility to Hatco's corporate predecessors. Grace contends that any damage that occurred after that date did not occur to property owned by Grace, but to property previously alienated by Grace. It therefore contends that the owned-property exclusion does not apply to such damage. Grace contends that the unambiguous language of the owned-property exclusion does not preclude damage for property formerly owned [by] Grace, and that if the insurers intended to exclude such property from coverage they could easily have done so with an "alienated premises" exclusion.
That argument was accepted by the District Court. Of course, in this case, the Reliance policy does make reference in subparagraph (3) of the exclusion clause to non-coverage for "alienated premises," and thus a result contra to the decision by the Hatco Corp., Id. court would be appropriate.
A similar analysis and conclusion as to the specific affect of the words "alienated premises" was reached in Rieder v. Cherokee Ins. Co., 635 F. Supp. 699, 702 (E.D.Pa. 1986), aff'd 813 F.2d 398 (3rd Cir.), cert. denied, 484 U.S. 823, 108 S.Ct. 86, 98 L.Ed.2d 47 *153 (1987); see also Taylor-Morley-Simon, Inc. v. Michigan Mut. Ins. Co., 645 F. Supp. 596 (E.D.Mo. 1986), aff'd 822 F.2d 1093 (8th Cir.1987).
Property excluded from liability insurance coverage cannot become insured property as a result of its alienation, where an alienated premises exclusion is contained within the "owned-property exclusion" of an insurance policy. Hatco Corp. v. W.R. Grace & Co., supra.
In order to avoid the clear and unambiguous language contained in the exclusionary clause, Armstrong's position, both within its brief and at oral argument, was that the "owned-property exclusion" (subsection 1), will not bar the recovery of cleanup costs incurred at the insured site if those costs are incurred upon the insured site but are designed to prevent actual and threatened harm to third-party property. Armstrong also asserted that an identical analysis was applicable to the exclusionary language (subsection 3) referable to "premises alienated."
This court adopted the argument offered by Armstrong and relied upon Broadwell Realty v. Fidelity & Cas., supra, 218 N.J. Super. at 525-529, 528 A.2d 76 to the effect that, 218 N.J. Super. at 529, 528 A.2d 76
We hold that the costs of preventive measures taken by Broadwell on its own property in response to the DEP directive which were designed to abate the continued flow of contaminants on to adjacent lands are recoverable under the policy.
........
To the extent that all or a portion of the response expenses pertain solely to damage to the Broadwell site itself and not to prevent off-site contamination, the owned-property exclusion clearly applies, and such damage is not within the coverage. (Emphasis added).
Based upon the Broadwell analyses, this court specifically concluded, 259 N.J. Super. 538, 566, 614 A.2d 642:
[T]he expenses which are reimbursable [are] those expenses separately incurred or to be incurred as a direct result of governmental action designed to prevent future anticipated damage claims. [E]xpenses incurred solely on the Kerr Glass site itself which were not incurred to prevent off-site contamination are not reimbursable as *154 they fall within the ambit of the unambiguous property exclusion provisions of the insurance. (Citations omitted).
Our Supreme Court in State v. Signo Trading International, Inc., 130 N.J. 51, 612 A.2d 932 (1992) construed a comprehensive liability insurance policy containing an "owned-property exclusion" provision similar to the clause in the case sub judice. The court specifically declared the insuring contractual language to be clear and unambiguous and it specifically overruled the interpretation and import enunciated in Broadwell Realty v. Fidelity & Cas. Co., supra. Accordingly, this court's prior ruling must be modified. The expenses incurred as cleanup measures by any transferee of property formerly owned by Armstrong, even if incurred as a direct result of governmental action designed to prevent future anticipated damage to adjacent property owners are not recoverable from Reliance by virtue of the exclusionary language in subsections (1) and/or (3) of the Reliance policies.
In response to the motion for modification, Armstrong has asserted that Reliance must be estopped from asserting any exclusion from coverage by virtue of the judicial mandate delineated in Griggs v. Bertram, 88 N.J. 347, 443 A.2d 163 (1982).
Estoppel of an insurance carrier's assertion of exclusionary language affecting coverage as provided within an insurance policy was first fully articulated in Merchants v. Indem. Corp. v. Eggleston, 37 N.J. 114, 179 A.2d 505 (1962) and was later expanded to encompass the facts delineated in Griggs v. Bertram, supra. The theoretical reasons of both precedents are fully analyzed in American Handling Equip. v. T.C. Moffatt & Co., 184 N.J. Super. 131, at 139-141, 445 A.2d 428 (App.Div. 1982).
An insurance carrier will be estopped from invoking exclusions from coverage where by its affirmative action it has controlled the defense in a lawsuit (Eggleston), or where it assumes the control of a claim asserted against its insured prior to the filing of a lawsuit (Griggs). In each instance our Supreme Court found that the affirmative action of the insurer prejudiced the position of the insured. The existence of prejudice, whether *155 actual or constructive, served as the predicate for invoking the doctrine of estoppel. Merchants Indem. Corp. v. Eggleston, supra, 37 N.J. at 129, 179 A.2d 505; Griggs v. Bertram, supra, 88 N.J. at 356, 443 A.2d 163; American Handling Equip. v. T.C. Moffatt & Co., supra. 184 N.J. Super. at 139-140, 445 A.2d 428 see also, 184 N.J. Super. at p. 139 fn. 1, 445 A.2d 428.
For the reasons expressed below, this court concludes that Reliance will not be estopped from asserting the exclusionary provisions of the insurance policies applicable to this litigation. The facts supporting this conclusion are uncontradicted.
On April 3, 1989, Armstrong was served with a third-party summons and complaint by Kerr in the litigation instituted by ANCC. There is no evidence that prior to April 3, 1989 Kerr asserted any claim against Armstrong or that Kerr had even informed Armstrong of any potential lawsuit to be filed against Kerr by ANCC. There is no evidence that Reliance had any prelitigation knowledge of any claims affecting its insured.
On April 13, 1989, Armstrong forwarded the third-party complaint, served upon it by Kerr, to Reliance and requested that Reliance provide Armstrong with a defense. Armstrong specifically reminded Reliance of the necessity of filing an answer to the third-party complaint by April 23, 1989. Armstrong also advised Reliance that it had preliminarily contacted private counsel respecting its future defense of the litigation instituted by Kerr.
On April 27, 1989, Armstrong specifically informed Reliance that private counsel had in fact been retained to defend the "ANCC-Kerr" litigation.
On June 28, 1989, Reliance responded to Armstrong by acknowledging receipt of the third-party complaint, at which time it advised Armstrong, "We are presently reviewing our obligation to Armstrong World Industries, Inc. We will notify you within a reasonable time of our decision in this matter."
It is clear that Reliance never thereafter specifically, in writing or orally, disclaimed coverage, refused to provide a defense to *156 Armstrong, or alternatively, offered to provide a defense pursuant to a reservation of rights. Merchants Indem. Corp. v. Eggleston, supra, 37 N.J. at 126, 179 A.2d 505.
This factual scenario is clearly distinguishable from Griggs and Eggleston. Reliance did not act prior to the actual commencement of legal action so as to cause Armstrong to believe insurance coverage was existent, as in Griggs, thus precluding it from investigating the Kerr Glass allegations, nor did it actually assume the defense of Armstrong and thereafter attempt to disavow its insurance coverage and its responsibility, as in Eggleston. Simply stated, Reliance took no affirmative action resulting in prejudice, either actual or constructive, to Armstrong's position. Additionally, Reliance's failure to act, through non-response to Armstrong's communications, did not in reality prejudice Armstrong as Armstrong had, prior to April 27, 1989, engaged the services of counsel to provide it with a defense to the third-party complaint.
It is not uncommon for this court to observe an insured file an answer to a complaint and to simultaneously file a third-party complaint for declaratory judgment against its insurance carrier seeking a declaration of coverage and requiring the insurance carrier to provide a defense. Alternatively, insureds regularly file separate declaratory judgment actions seeking the identical relief. Such action was not pursued by Armstrong in the "ANCC v. Kerr v. Armstrong" litigation nor was a separate declaratory action filed by Armstrong in reaction to the failure to further respond by Reliance after June 28, 1989.
In American Handling Equip. v. T.C. Moffatt & Co., supra, 184 N.J. Super. at 141 and 142, 445 A.2d 428 the court stated:
The imputation of prejudice is not an absolute rule. The conduct of the carrier giving rise to estoppel must constitute a material encroachment upon the rights of an insured to protect itself by handing the claim [or suit] directly and independently of the "insurer" before the presumption of prejudice can arise. Griggs, supra, 88 N.J. 359, 443 A.2d 163 (Emphasis supplied).
In Griggs, supra, the investigation of the putative claim, without disavowing insurance coverage due to the insurance exclusion, was sufficient to allow the court to presume prejudice to the insured *157 and to estop the insurer from invoking the exclusion to coverage. Armstrong cannot cite any judicial precedent where estoppel has been invoked against an insurer based upon inaction and where there is an absence of particularized prejudice to the insured proximately caused by the inaction.
It is clear that Armstrong could have pursued several remedies. Without intending to be exhaustive, Armstrong might have supplemented its communication of April 13, 1989, and April 23, 1989, with additional inquiries respecting Reliance's intent or with a specific supplemental inquiry as to the failure of Reliance to delineate its position within a reasonable time after it received, from Reliance, an acknowledgment of the claim on June 28, 1989. The possible dereliction of Reliance in failing to offer a defense might have been litigated as a fourth-party complaint in the "ANCC v. Kerr v. Armstrong" litigation, as in Bonnet v. Stewart, 68 N.J. 287, 344 A.2d 321 (1975), or a separate declaratory judgment action might have been filed, as was done in Sussex Mut. Ins. Co. v. Hala Cleaners, Inc., 75 N.J. 117, 380 A.2d 693 (1977).[4]
Although Armstrong cites Griggs v. Bertram, supra, 88 N.J. at 357, 443 A.2d 163, for the general proposition that:
Upon the receipt from its insured of a claim or notification of an incident that many give rise to a claim, an insurer is entitled to a reasonable period of time in which to investigate whether the particular incident involves a risk covered by the terms of the policy.... But once an insurer has had a reasonable opportunity to investigate, or has learned grounds for questioning coverage, it then is under a duty promptly to inform its insured of its intention to disclaim coverage or of the possibility that coverage will be denied or questioned. (Citation omitted).
As the basis of its assertion that estoppel should be invoked against Reliance, this court specifically finds, that such a result can only result when there is a demonstrative prejudice to the insured. In this case there is no prejudice, as Armstrong retained *158 counsel to defend it within 14 days of service of the third-party complaint. Armstrong at all times was represented by counsel of its own selection and fully participated in its own defense. Prejudice is an essential ingredient of estoppel, Merchants Indem. Corp. v. Eggleston, supra, 37 N.J. at 129, 179 A.2d 505, and in its absence, said doctrine cannot be invoked.
Although it might be argued that the continual accrual of counsel fees by Armstrong resulting from its retainer of private counsel in the defense of the ANCC litigation, constitutes prejudice, any such prejudice could have been mitigated through affirmative litigation procedures available to Armstrong but which were not utilized by it. Additionally, it must be noted that the incurrence of counsel fees, a finite calculable sum, is vastly different from the infinite immeasurable and incalculable prejudice which the court presumed was suffered by the insured as in Griggs v. Bertram, supra.[5]
Reliance has also presented an additional alternative argument contending that through procedural deficiencies, Armstrong is barred from asserting that Reliance is estopped from seeking enforcement of the insurance exclusion clauses.
As correctly argued, R. 4:5-4 Affirmative Defenses specifically mandates that estoppel be asserted as a responsive pleading. Armstrong failed to assert this concept in its answer, even though Reliance, in its complaint, specifically invoked the exclusion insurance clauses as its basis for a declaratory judgment. Armstrong also omitted any reference to the concept of estoppel in its counterclaim which might have served as a basis to overcome the *159 procedural deficiency of its answer. R. 4:5-4; Pressler Current N.J. Court Rules, Comment R. 4:5-4.
At oral argument[6] Armstrong's counsel made reference to Griggs v. Bertram, supra, in conjunction with another unrelated legal argument. In response, Reliance, through counsel, orally asserted that Griggs had no relevancy to these proceedings. Obviously Armstrong was aware of Griggs and the concept of estoppel, yet, Armstrong did not seek leave, pursuant to R. 4:9-1 to amend its answer or counterclaim.
Although the thrust of Armstrong's position in this stage of these proceedings is premised upon the Griggs v. Bertram, supra, decision, it still has not formally moved for leave to amend its prior pleadings to assert the theory of estoppel.[7]
Armstrong should not be permitted to argue the inapplicability of the exclusion clause in the Reliance policies based upon the distinctions and interpretation outlined in Broadwell Realty v. Fidelity & Cas. Co., supra, and then, after that interpretation is rendered non-viable by our Supreme Court, as in Signo Trading, ask that this court permit it to assert estoppel to bar the entire applicability of the exclusionary clause. The assertion of the concept of estoppel initially, if sustained, would have avoided much of the proceedings conducted to date. The court cannot countenance the maneuvering of pleadings. Even though alternative, and even inconsistent pleadings are permitted by our practice and procedure, inconsistent theories should not be bifurcated at different stages of litigation. Amendment to pleadings, R. 4:9-1 are liberally granted, yet permission to amend is within the sound *160 discretion of the court. Pressler, Current N.J. Court Rules, Comment R.4:9-1.
In the absence of any particularized articulated and demonstrable prejudice arising from Reliance's failure to affirmatively deny coverage after April 13, 1989, and by virtue of procedural deficiencies, R. 4:5-4, estoppel shall not be applicable to bar the assertion by Reliance of the exclusion clause set forth within its insurance policies.
As indicated, ante, Armstrong initially argued that the exclusion clause subparagraph (1) and the exclusion language in subparagraph (3) should be construed identically, but neither subsection would bar recovery of cleanup costs due to the exception articulated in the Broadwell analysis.
Armstrong has now argued that the exclusion clause, even if assertable, is of no significance due to the existence of groundwater pollution claims set forth in the "ANCC v. Kerr v. Armstrong" litigation. In essence, Armstrong asserts that groundwater is not the property of Armstrong nor any party in its chain of title. It contends groundwater is owned by the State of New Jersey, and thus, the cleanup costs incurred to eliminate groundwater contamination is an existent claim of a third party, here the State of New Jersey, and as such, it is an insurable claim not barred by the exclusion clause.
This court specifically notes that although the record presented to date demonstrates that groundwater pollution was part of the claims originally asserted against Armstrong's transferee, by the D.E.P., there is no evidence presented that groundwater pollution has affected any actual third party adjacent property claimant.[8] At best, groundwater pollution on the ANCC property, in this case, is a threat to adjacent property owners. As enunciated in *161 Signo Trading, Id., 130 N.J. at 65, 612 A.2d 932, "the ... policy at issue indemnifies the insured only for damage to the property of a third party and not for the threat of such damage." Any contrary ruling would transform this liability insurance policy insuring for tort liability to others into a policy of insurance insuring against the losses of the insured itself. State, DEP v. Signo Trading Inter., 235 N.J. Super. 321, at 336, 562 A.2d 251 aff'd 130 N.J. 51, 65, 612 A.2d 932 (1972), Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 237-240, 405 A.2d 788, (1979).
Our Supreme Court in Signo Trading, Id. 130 N.J. at 64-65, 612 A.2d 932, specifically referred to Intel Corp. v. Hartford Acc. & Ind. Co., 952 F.2d 1551 (9th Cir.1991) and State v. New York Central Mutual Fire Ins. Co., 147 A.D.2d 77, 542 N.Y.S.2d 402 (1989) which might support the argument advanced by Armstrong. However, the Court distinguished Intel Corp., Id. due to the uniqueness of California law, and it found it unnecessary to conclude whether New York Central Mutual, Id. was correctly decided. This conclusion specifically states, 130 N.J. at 65, 612 A.2d 932:
Whether or not that case [New York Central Mutual] was correctly decided, its reasoning is not applicable here. First, the trial court in this case found no evidence that "There was migration of the chemical pollutants off the Morton Springer property... into any of the waters of the state." Signo Trading, supra, 235 N.J. Super. at 328-29 [562 A.2d 251]. Second, to the extent that the court in New York Central Mutual invoked coverage because of a "threat" that the oil would enter the ground water, its reasoning is unpersuasive. [.] . . the CGL policy at issue indemnifies the insured only for damage to the property of a third party and not for the threat of such damage.
Armstrong contends that the parens patriae interest of the State of New Jersey in the groundwater of this State is a sufficient interest in property so as to constitute existent damage to a third party, to wit: the State of New Jersey, thus creating a significant differentiating factor to remove this case from the general rule enunciated in Signo Trading, Id.
Armstrong relies upon the decision in State v. New York Central Mutual Fire Ins. Co., Id. to support its theory.
*162 New York Central Mutual, Id., was an action brought by the State of New York pursuant to Navigation Law § 190, to recover money expended by the New York Environmental Protection and Spill Compensation Fund for clean up costs expended to eliminate the environmental damage resulting from a home heating oil spill.
Navigation Law Article 12, imposes strict liability upon anyone responsible for a discharge of petroleum which threatens the State's navigable waters. The New York Court noted, "the Legislature has seen fit to allow plaintiff, if it be so inclined, to bring a claim for these costs directly against the homeowner's insurer. (Navigation Law § 190)." New York Central Mutual, Id., 542 N.Y.S.2d at 430.
Based upon the facts of that case, and pursuant to specific legislature authority, the New York Court concluded:
There is no question but that the fuel oil entered the groundwater, or at the very least threatened to (see, Merrill Transp. Co. v. State of New York, 94 A.D.2d 39, 42-43, 464 N.Y.S.2d 249), and since groundwater is a natural resource (Navigation Law § 172[12], [18] protected by plaintiff as trustee for its people (Navigation Law § 170), the oil spill caused damage to property other than that of the insured, thereby triggering defendant's obligation under its policy (see, Broadwell Realty Servs. v. Fidelity & Cas. Co. of N.Y., 218 N.J. Super. 516, 528 A.2d 76) and plaintiff's entitlement to summary judgment.
Unlike the facts presented in the case sub judice, the New York statutory scheme specifically creates a trustee status between the State of New York, as a fiduciary, and its citizenry as beneficiaries of a trust. The trust res includes the groundwater of the State of New York. This special status is a creature of the New York legislature. There is no specific New Jersey legislative counterpart to the New York legislation, to support Armstrong's argument.
Armstrong also ignores the fact that groundwater, if damaged by a third party, may serve as the basis for a damage claim by the property owner of the ground surface. Jackson Twp. v. Hartford, 186 N.J. Super. 156, 451 A.2d 990, (Law Div. 1982). The "property interest" in groundwater is clearly an interest held by the owner of the recorded title of the surface land.
*163 In Broadwell Realty v. Fidelity & Cas. Co., supra, 218 N.J. Super. at 528, 528 A.2d 76, the court, in its discussion of the parens patriae concept equates the authority of the State of New Jersey as a "colorable claim for damage." It is this court's opinion that a "colorable claim for damage" is not synonymous with a "property interest" in real property.[9]
Traditionally, a property owner seeking damages from a tortfeasor may recover the costs required to restore damaged property to its status prior to damage and/or the difference in the value of the property before and after the damage. Huber v. Serpico, 71 N.J. Super. 329, 176 A.2d 805 (App.Div. 1962) Restatement, Tort, § 929 Comment(b). The tort claimant property owner, however, is not compelled to reinstate its property to its pre-damage status. The State, however, seeks, under the aegis of parens patriae authority to abate pollution and to assure pollutant removal so as to return the property to its pre-pollution status. This distinction differentiates a "concern" with the condition of property attributable to the State, from a "property interest" attributable to the owner of realty.
Similarly, an owner of property has an insurable interest and can insure itself, through first party insurance coverage, for damages it sustains, which might include damages to the groundwater below the surface of its real property boundaries. This court can find no authority which would permit the State to insure itself against damages to the groundwater existent in this State, *164 irrespective of its substantial and legitimate concern for the purity of groundwater.
As a trial court, this court is reluctant to create a new theory of insurance indemnification as argued by Armstrong.
For the reasons expressed, the motion for summary judgment filed by Reliance, which encompassed its motion for modification of the prior order of this court, is granted. Accordingly, the cross-motion for summary judgment filed by Armstrong is denied.[10]
NOTES
[1] A synopsis of the factual history will assist the reader. ANCC, the owner of an industrial tract, intending to sell to Triangle, was required, pursuant to a consent order with the N.J.D.E.P., to incur substantial environmental clean up expenses upon its property. ANCC sued Kerr, its grantor, to recoup those expenses. Kerr named its own grantor, Armstrong, as a third-party defendant and ANCC then named Armstrong a direct defendant. When Armstrong owned the property, it was insured by Reliance under comprehensive general liability policies containing an "owned-property exclusion." Reliance filed a declaratory judgment action seeking a judicial declaration of non-coverage. Armstrong filed a counterclaim seeking a declaration of coverage, indemnification for sums paid in settling the "ANCC v. Kerr v. Armstrong" litigation and for other relief not specifically applicable to the pending motions.
[2] This motion for modification was subsequently expanded to a motion for summary judgment by Reliance and in response to a cross-motion for summary judgment by Armstrong.
[3] Since this court did not specifically refer to the phrase, "premises alienated" within its opinion, upon the filing of the motion for modification by Reliance, this court invited counsel to file new briefs on the entire exclusionary clause.
[4] Although Sussex Mut. Ins. Co. v. Hala Cleaners, Inc. was a declaratory judgment action instituted by the insurance carrier, similar relief could have been sought by Armstrong accompanied by a separate motion to stay the underlying ANCC v. Kerr v. Armstrong action.
[5] This opinion has not addressed issues respecting counsel fee reimbursement and the ramifications, if any, of the decisions enunciated in Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Co., 98 N.J. 18, 483 A.2d 402 (1984), Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 267 A.2d 7 (1970), Hartford Group v. Marson Constr. Corp., 186 N.J. Super. 253, 452 A.2d 473 (App.Div. 1982), certif. denied, 93 N.J. 247, 460 A.2d 656 (1983), West v. MacDonald, 103 N.J. Super. 201, 247 A.2d 20 (1967), aff'd o.b. 52 N.J. 536, 247 A.2d 129 (1968). It is anticipated the issue of counsel fees will be addressed in a future motion.
[6] Oral argument occurred on February 28, 1992, prior to this court opinion on July 7, 1992.
[7] Armstrong justified its failure to assert estoppel as an affirmative defense at oral argument on December 16, 1992, as an avoidance of counter allegations by Reliance that such a pleading might be deemed frivolous and might subject Armstrong to the imposition of sanctions. This court finds that excuse unpersuasive.
[8] An analysis of all pleadings filed in the ANCC litigation fails to demonstrate any threat of pollution by any adjacent property owner. Thus the only claim of groundwater pollution are complaints asserted by the D.E.P. as to pollution on the ANCC parcel which was to be conveyed by it to Triangle.
[9] The Armstrong argument raises several issues of judicial concern, particularly the issue of apportionment of damages where property insurance contains an "owned-property exclusion." For example, if the State of New Jersey sues a property owner for the clean up expenses the State incurs resulting from pollution to the surface which also has permeated the groundwater, are the costs to be recouped, recoverable from the surface owner individually, with a corresponding right of indemnification by the surface owner against its general liability insurance carrier based upon apportionment as to the portion of costs attributable to clean up of the groundwater? In another context, our Supreme Court has discussed the possible judicial burdens which are envisioned in apportionment litigation. SL Industries v. American Motorists, 128 N.J. 188, 607 A.2d 1266 (1992).
[10] Reliance also filed a separate motion pursuant to R. 4:42-2, for a reconsideration of this court's original opinion pertaining to the contractual liability exclusion clause of the Reliance insurance policies. 259 N.J. Super. 538, 567-69, 614 A.2d 642. By virtue of this court's ruling respecting the "owned property exclusion," the issues raised by the motion for reconsideration are deemed moot, without prejudice, at this time.