969 A.2d 1122 (2009)
198 N.J. 600
Kathleen V. BAUER, Administratrix ad Prosequendum for the Estate of James Allan Hamby, and Individually, Plaintiff-Respondent,
v.
Frederick NESBITT, III, driver, Julia Nesbitt, owner and John Doe Dram Shop and/or Homeowner Server of Alcohol, Defendants, and
C View Inn, Defendant-Appellant.
A-16 September Term 2008
Supreme Court of New Jersey.
Argued December 2, 2008.
Decided May 7, 2009.
*1123 Terence M. King argued the cause for appellant.
Rudolph C. Westmoreland argued the cause for respondent (Westmoreland Vesper *1124 & Quattrone, attorneys; Mr. Westmoreland and Kathleen F. Beers, on the brief).
Justice ALBIN delivered the opinion of the Court.
This appeal involves a wrongful death and survivorship lawsuit filed against defendant C View Inn by plaintiff Kathleen V. Bauer. Plaintiff's twenty-one-year-old son, James Allan Hamby, was killed in an accident while a passenger in a car operated recklessly by a nineteen-year-old drunk driver, Frederick Nesbitt, III, after the two young men had socialized at the Inn. In the civil complaint, plaintiff claims that the Inn had a duty to monitor Nesbitt for signs of intoxication. Although the underage Nesbitt was not served alcohol by any of the Inn's employees, he had been drinking before his arrival at the Inn and, while there, Hamby surreptitiously slipped rum into Nesbitt's soda.
The trial court granted summary judgment in favor of the Inn, finding that it did not violate the New Jersey Licensed Alcoholic Beverage Server Fair Liability Act (Dram Shop Act), N.J.S.A. 2A:22A-1 to -7, or otherwise act negligently. The Appellate Division reversed, based on a theory of liability not set forth in the complaint  that the Inn had served Hamby alcohol while he was visibly intoxicated and that, because of his impaired state, he got into a car with an intoxicated driver. Those facts, according to the panel, satisfied the prerequisites for a claim under the Dram Shop Act. The panel also determined that, under common-law principles of negligence, the Inn owed a duty to monitor Nesbitt, even if it had not served him alcohol, and to protect him from harming himself or others. Based on the evidence, the panel reasoned that a jury could find that the Inn's failure to monitor Nesbitt was the proximate cause of Hamby's death.
We reverse the Appellate Division for two reasons. First, plaintiff never pled in her complaint that the Inn violated a statutory or common-law duty by serving Hamby alcohol while he was visibly intoxicated. That theoretical cause of action was raised by the panel on its own for the first time in its opinion. The Inn was not given fair notice in the complaint of a cause of action involving the service of alcohol to Hamby, and accordingly a theory of the case that was never advanced by plaintiff cannot be sustained.
Second, because no evidence was produced that the Inn either served or allowed the service of alcohol to Nesbitt, plaintiff has no valid claim under the Dram Shop Act. Significantly, no one who observed Nesbitt at the Inn testified that he appeared visibly intoxicated or in any way impaired. Although circumstances may dictate that a commercial establishment has a duty to ensure the safety of its guests from a foreseeable danger, in this case, we cannot find that the Dram Shop Act or common-law principles of negligence imposed a duty on the C View Inn to monitor the appearance of a person to whom it had not served alcohol. We therefore reinstate the trial court's dismissal of plaintiff's claim against the Inn.

I.

A.
For purposes of this appeal, the critical events occurred at the C View Inn, a tavern in Cape May County, beginning at 7:00 p.m. on September 3, 2003.[1] At *1125 that time, five friends entered the Inn on its weekly "Wing Night" to socialize and drink. The group consisted of defendant Frederick Nesbitt, III, then age nineteen, and James Hamby, Jason Kleinschmidt, Wade Dickinson, and Kevin Smith, all of whom were over the age of twenty-one. The five were seated at a table approximately six feet from the bar. The waitress, Casey Walker, who served the table, as well as the bartender and other Inn employees, knew that Nesbitt was a minor. No one has claimed that anyone at the C View Inn that evening served Nesbitt alcohol or allowed Nesbitt to drink any alcohol brought to the table.
However, Nesbitt did drink alcohol before his arrival at the Inn. Earlier in the evening, at approximately 5:30 p.m., Nesbitt picked up Hamby at his home and drove to the Seaville Tavern, where Hamby purchased a pint of rum and a twelve-pack of beer. Nesbitt was the "designated driver" because Hamby's license had been suspended due to a driving-under-the-influence conviction. Back in the car, Hamby drank beer, throwing the empty bottles out the window, while Nesbitt took a "couple swigs" from the bottle of rum. They then drove to the home of Kevin Smith, where they met their friends Jason Kleinschmidt and Wade Dickinson. At Smith's home, Nesbitt ate some pizza and drank some more rum. Afterwards, Nesbitt drove Hamby and Kleinschmidt to the C View Inn. On the way, Nesbitt and Hamby drank a beer, and in the Inn's parking lot, Nesbitt "probably" had a swig of the rum. When they entered the Inn, half of the twelve-pack of beer still remained unconsumed in the car; Hamby sneaked in the bottle of rum inside his pants' pocket.
During the roughly two hours that the group of five socialized at the Inn, all but Nesbitt were served alcohol at their table. Indeed, Nesbitt claimed that the Inn's employees, who knew he was a minor, were watching him like a hawk.[2] In the course of the evening, the four of-age members of the group were served three to four pitchers of light beer as well as vodka and orange juice in tall glasses. Additionally, thirty chicken wings and an order of French fries were brought to the table. The waitress  who had been Nesbitt's high school classmate  provided Nesbitt with several glasses of Coca-Cola. Although Nesbitt admitted that he was not served alcohol by any of the Inn's employees or poured any beer from the pitchers on the table, he recalled that on two occasions Hamby slipped rum into his soda glass under the table.
Because it was "Wing Night," the Inn was packed with approximately sixty people. At times, Hamby grew boisterous, and at one point he exposed himself to his friends, saying that "he wanted to get a smiley face tattooed on his penis." To Kleinschmidt, that behavior indicated that *1126 Hamby was drunk. However, Dickinson observed no clear signs that Hamby was intoxicated: he was not talking loudly, staggering, or acting rowdy. No one who observed Nesbitt at the Inn offered the opinion that he appeared intoxicated. He was not falling down or stumbling or exhibiting any other obvious signs of intoxication. Indeed, Dickinson thought that Nesbitt "looked like the safest to drive."
Between 9:00 p.m. and 9:30 p.m., the group departed from the C View Inn, with Hamby leaving in Nesbitt's car. At approximately 10:35 p.m., while Nesbitt was driving north on the Garden State Parkway, he lost control of the car, which crashed into a guardrail and rolled over. Neither Nesbitt nor Hamby was wearing a seat belt. Nesbitt was thrown through the car's back window, suffering serious injuries; Hamby died of the injuries he sustained in the crash. After Nesbitt was taken to the hospital, a sample of his blood yielded a 0.199% blood alcohol concentration (BAC).[3] Thomas Hand, plaintiff's drug and alcohol expert, opined that Nesbitt's BAC "was definitely above a .10[% BAC] in the C-View Inn, and therefore [Nesbitt] would have been showing obvious physical signs of intoxication ... before he left the premises." The record does not reveal what became of the approximately six bottles of beer that were left behind in Nesbitt's car when the group entered the C View Inn or the bottle of rum that Hamby secreted on his person.

B.
In July 2004, plaintiff Kathleen Bauer, individually and as administratrix ad prosequendum of the estate of her son, James Allen Hamby, filed a five-count wrongful death and survivorship complaint, naming as defendants, Nesbitt, Nesbitt's mother (the owner of the ill-fated car), and the Inn. The first three counts of the complaint allege that Nesbitt negligently operated the car, causing Hamby's death, and that Nesbitt's mother negligently entrusted the car to her son. The fourth count alleges that the C View Inn committed common-law negligence and violated the Dram Shop Act by either serving the underage Nesbitt alcohol when he was visibly intoxicated or allowing him to consume alcohol in his clearly impaired condition. In that count, plaintiff contends that the conduct of the Inn was the proximate cause of her son's death. The fifth count names as defendants, John Doe Dram Shop or Homeowner Server of Alcohol, in the event that discovery establishes that, within several hours of the deadly accident, one of those fictitious defendants served or allowed to be served alcohol to Nesbitt as a minor or when he was visibly intoxicated. Nowhere in the complaint did plaintiff allege that the C View Inn acted negligently or violated the Dram Shop Act by serving Hamby alcohol when he was visibly intoxicated.
After a period of discovery, the Inn moved for summary judgment, arguing that, based on the record, plaintiff had no viable cause of action under the Dram Shop Act. Initially, the trial court denied the Inn's motion. However, on a motion for reconsideration, the court dismissed *1127 plaintiff's action against the Inn, concluding that "[t]here [was] no witness testimony, and no facts to affirmatively support the argument that Nesbitt drank beer served to the table by C View's employees." The court also held that, even if Nesbitt had consumed rum that he or Hamby "surreptitiously brought into the bar," the Inn could not be liable for "negligent service" under the Dram Shop Act. The court specifically found, in deciding the initial motion, that the Inn could not be held liable for Hamby's "decision to secretly serve alcohol, procured outside of C-View, to a minor on C-View's premises."[4]

II.
The Appellate Division reversed the grant of summary judgment and reinstated plaintiff's claim against the Inn. Bauer v. Nesbitt, 399 N.J.Super. 71, 85, 942 A.2d 882 (App.Div.2008). The panel acknowledged that "[t]he [Dram Shop] Act constitutes the exclusive remedy for persons injured as the result of negligence involving the service of liquor by a commercial establishment." Id. at 81, 942 A.2d 882. Under the Act, the Inn would be liable for negligence if one of its employees "`served a visibly intoxicated person, or served a minor, under circumstances where the [employee] knew, or reasonably should have known, that the person served was a minor'" and if the Inn's negligence proximately caused Hamby's injuries. Ibid. (quoting N.J.S.A. 2A:22A-5). The panel found that the C View Inn served alcohol to Hamby, who "showed unmistakable signs of intoxication," id. at 82, 942 A.2d 882, and that the Inn made no effort to call a cab or ensure that "Hamby was driven home by a sober companion," thus raising a jury issue concerning the Inn's liability under the Dram Shop Act, id. at 83-84, 942 A.2d 882.
Alternatively, the panel stated that, based on plaintiff's expert report, the Inn could be held liable under a theory that it negligently supervised Nesbitt who "would have been showing obvious physical signs of intoxication in the C-View." Id. at 80, 84-85, 942 A.2d 882. On the one hand, the panel agreed with the trial court that the Inn could not be held accountable under the Dram Shop Act for the "constructive service of liquor to Nesbitt" as a result of Hamby secretly spiking his friend's Coke with rum. Id. at 84, 942 A.2d 882. On the other hand, despite the undisputed evidence that the Inn did not serve Nesbitt alcohol, the panel determined that the Inn had a common-law "duty to protect Nesbitt from the foreseeable risk of injury to himself and others from an automobile accident by insuring that Nesbitt did not drive while in an intoxicated state." Id. at 85, 942 A.2d 882.
The panel concluded that, based on the facts of record, the Inn could be found liable under the Dram Shop Act or for breaching a common-law duty of care that it owed to its patrons. Ibid.
We granted the Inn's petition for certification. 196 N.J. 85, 951 A.2d 1038 (2008).

III.
Defendant C View Inn first argues that the Appellate Division erred by reinstating plaintiff's complaint and allowing the case against it to proceed on a theory of negligent service of alcohol to Hamby. The Inn points out that the complaint does not assert in "any caption, count, paragraph or sentence" a cause of action based on negligent service of alcohol to *1128 Hamby. Additionally, plaintiff did not present that issue to the trial court when it decided the summary judgment motion nor raise the issue in her appeal before the Appellate Division.
We agree with the Inn that the complaint does not even remotely suggest a Dram Shop Act cause of action based on the C View Inn's service of alcohol to Hamby. Nowhere in the complaint is there a claim that the Inn is liable for Hamby's death because it served him alcohol while he was visibly intoxicated. Moreover, plaintiff did not pursue such a theory as a basis for liability in her summary judgment motion or on appeal. The negligent-service-of-alcohol-to-Hamby theory, as a basis for holding the Inn liable, originated in the Appellate Division's opinion.
If not pled in a complaint, a cause of action cannot spring to life for the first time in an appellate court opinion. The basic function of a complaint is to "fairly apprise an adverse party of the claims and issues to be raised at trial." Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 75, 577 A.2d 1239 (1990) (citation and internal quotation marks omitted); see R. 4:2-2 ("A civil action is commenced by filing a complaint with the court."). Rule 4:5-2 requires that a complaint "set[] forth a claim for relief" and that it "contain a statement of the facts on which the claim is based, showing that the pleader is entitled to relief." Although "[a]ll pleadings shall be liberally construed in the interest of justice," R. 4:5-7, the fundament of a cause of action, however inartfully it may be stated, still must be discernable within the four corners of the complaint. A thoroughly deficient complaint  a complaint that completely omits the underlying basis for relief  cannot be sustained as a matter of fundamental fairness. An opposing party must know what it is defending against; how else would it conduct an investigation and discovery to meet the claim? See generally Dewey, supra, 121 N.J. at 75, 577 A.2d 1239. Plaintiff made no effort to amend her pleadings in a timely manner, despite the liberality our courts have shown in permitting parties to do so. See R. 4:9-1 and: 9-2; see also, e.g., Kernan v. One Wash. Park Urban Renewal Assocs., 154 N.J. 437, 456-57, 713 A.2d 411 (1998); Cuesta v. Classic Wheels, Inc., 358 N.J.Super. 512, 517, 818 A.2d 448 (App. Div.2003); Oscar v. Simeonidis, 352 N.J.Super. 476, 489, 800 A.2d 271 (App. Div.2002).
Without fair notice of a claim there cannot be fair play. Plaintiff cannot proceed with a cause of action by piggybacking on an Appellate Division opinion that framed a theory of the case that plaintiff, for whatever reason, did not raise. Because plaintiff did not allege in her complaint that the C View Inn violated the Dram Shop Act by negligently serving her son alcohol while he was visibly intoxicated, we reverse the Appellate Division and dismiss that claim.

IV.
We next address whether the C View Inn can be held liable for negligent supervision of Nesbitt in light of the undisputed evidence that no employee of the Inn served Nesbitt alcohol or allowed him to drink any of the alcohol, mainly pitchers of beer, brought to the table where he and his friends were fraternizing. Plaintiff contends that the Inn, which held an alcoholic beverage license, was bound by not only the dictates of the Dram Shop Act, but also common-law principles governing premises liability. In particular, plaintiff argues that the Inn had a duty to monitor Nesbitt, who was under the legally-authorized age to drink alcohol, and to act to ensure his safety and the safety of others if he appeared visibly intoxicated. Plaintiff *1129 submits that the Dram Shop Act does not preempt her common-law, negligent-supervision action. She claims that the Inn negligently allowed Nesbitt to leave its premises in an intoxicated condition, posing a foreseeable risk of harm to others.
In contrast, the Inn maintains that the exclusivity provision of the Dram Shop Act bars a negligent-supervision claim in the circumstances of this case. The Inn submits that imputing liability to a licensed alcoholic beverage server, who did not serve alcohol to a visibly-intoxicated tortfeasor or otherwise cause his patently-impaired condition, would defeat the purpose of the Dram Shop Act, which was intended to provide a licensed commercial establishment with immunity from liability for negligence  except as defined in the Act.
We begin our analysis with a review of the New Jersey Licensed Alcoholic Beverage Server Fair Liability Act, N.J.S.A. 2A:22A-1 to -7, commonly referred to as the Dram Shop Act.[5]N.J.S.A. 2A:22A-4 provides that the Dram Shop Act is "the exclusive civil remedy for personal injury or property damage resulting from the negligent service of alcoholic beverages by a licensed alcoholic beverage server." Under the Act, "[a] licensed alcoholic beverage server shall be deemed to have been negligent only when the server served a visibly intoxicated person, or served a minor, under circumstances where the server knew, or reasonably should have known, that the person served was a minor." N.J.S.A. 2A:22A-5(b). In order to sustain a liability award against an alcoholic beverage server, a person who suffers "personal injury or property damage as a result of the negligent service of alcoholic beverages by a licensed alcoholic beverage server" must also show that the "injury or damage" was "proximately caused by" and "a foreseeable consequence of the negligent service of alcoholic beverages." N.J.S.A. 2A:22A-5(a).
In Mazzacano v. Estate of Kinnerman, we explained that the Dram Shop Act "was carefully crafted to balance both the needs of licensed alcoholic beverage servers to secure affordable insurance and the rights of victims to recover for the negligent service of alcohol." 197 N.J. 307, 322, 962 A.2d 1103 (2009). At the time of the passage of the Act, "licensed alcoholic beverage servers were facing a liability insurance crisis." Ibid. The Legislature expressly declared that the Dram Shop Act was intended to "make it economically feasible for insurance companies to provide coverage" to alcoholic beverage servers, and to make the limits of civil liability "more predictable" and defined. N.J.S.A. 2A:22A-2. Thus, the Act was "designed to protect the rights of persons who suffer loss as a result of the negligent service of alcoholic beverages by a licensed alcoholic beverage server while at the same time providing a balanced and reasonable procedure for allocating responsibility for such losses." Ibid.
In view of both the Dram Shop Act's precise language and the reasons for its enactment, we cannot conclude that the Legislature intended a licensed alcoholic beverage server to be liable  in the circumstances presented here  for failing to monitor the conduct of a person to whom it did not serve alcohol, even if that person was intoxicated. As noted above, a licensed alcoholic beverage server is "negligent `only when the server served a visibly intoxicated person' or serves a minor." Mazzacano, supra, 197 N.J. at 324, 962 A.2d 1103 (quoting N.J.S.A. 2A:22A-5(b)). *1130 Indeed, to permit a negligent-supervision cause of action to proceed in this case would fly in the face of the liability limits that the Legislature put in place in the Dram Shop Act. The thrust of the Appellate Division's decision would impose on an alcoholic beverage server the duty to monitor every guest, including those to whom no alcohol was served, for signs of possible intoxication. Every license holder, whether a diner or tavern, would be potentially liable if a person ate nothing more than chicken wings on the premises, but had consumed alcohol earlier off-premises to the point of intoxication. It is one thing, under the Dram Shop Act, to be accountable for serving a visibly intoxicated patron an alcoholic beverage, it is another thing to serve that same person a Coca-Cola and still be responsible for his conduct once he leaves the premises.[6]
The facts of this case illustrate this very point. Here, Nesbitt was known to the waitress and bartender at the C View Inn. Nesbitt was never served any beverage other than a Coke. He did not imbibe any beer from the pitchers left on his table for his friends. Not one witness testified that Nesbitt appeared visibly intoxicated, and no one claims to have seen Hamby secretly pour rum into Nesbitt's soda glass under the table.[7] Although we know that Nesbitt had a 0.199% BAC at the time of the fatal accident, he and Hamby had left the Inn more than an hour earlier and entered a car that contained approximately six unconsumed bottles of beer. Additionally, we do not know what became of Hamby's bottle of rum. The conduct of Nesbitt and Hamby in the hour immediately before the accident remains somewhat of a mystery. With those missing facts and in light of the eyewitness accounts of Nesbitt at the Inn, it appears that plaintiff's expert engaged in sheer speculation by concluding that Nesbitt "would have been showing obvious physical signs of intoxication ... before he left the premises."
Given the record before us, plaintiff cannot make out a case falling squarely within the reach of the Dram Shop Act, nor does the evidence support a triable common-law, negligent-supervision action. To permit a negligent-supervision action to go forward in this case would eviscerate the protections given to licensed alcoholic beverage servers in the Dram Shop Act.
*1131 Our decision in no way weakens our case law concerning the duty of care governing commercial establishments. Business owners, including those with alcohol licenses, owe a duty "to provide a safe environment" to the people they invite onto their premises. See Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563, 818 A.2d 314 (2003). We impose such a duty on business owners because "they are in the best position" to prevent and control the risk of harm to their patrons and to others. Kuzmicz v. Ivy Hill Park Apts., Inc., 147 N.J. 510, 517, 688 A.2d 1018 (1997). Thus, every owner of a commercial establishment inviting the public onto its premises "owes a reasonable duty of care to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Jerista v. Murray, 185 N.J. 175, 191, 883 A.2d 350 (2005) (citation and internal quotation marks omitted). Circumstances may dictate that a business owner has a duty to safeguard a patron from a foreseeable danger.
The present case, however, is not one where a patron passed out drunk on the floor or fell ill or injured himself in the presence of the owner or an employee, requiring immediate assistance. See, e.g., Personal Representative of Estate of Starling v. Fisherman's Pier, Inc., 401 So.2d 1136, 1138 (Fla.Dist.Ct.App.) (holding business has affirmative duty to take steps to protect drunk man passed out on business's pier, such that he would not roll into ocean and drown), review denied, 411 So.2d 381 (Fla.1981); Miller v. McDonald's Corp., 439 So.2d 561, 565 (La.Ct. App.) (holding business owner had duty to render reasonable aid after learning person on his premises is injured or ill), writ not considered, 442 So.2d 462 (La.1983); Southland Corp. v. Griffith, 332 Md. 704, 633 A.2d 84, 91-92 (1993) (holding business had duty to provide aid to injured customer by calling police when customer requested that employee do so); Hovermale v. Berkeley Springs Moose Lodge No. 1483, 165 W.Va. 689, 271 S.E.2d 335, 338-40 (1980) (holding business had duty under Restatement (Second) of Torts § 314A (1965) to help man who collapsed). We do not consider here whether a licensed alcoholic beverage server, who does not serve a patron a drink, would have a duty to act in those circumstances or whether the Dram Shop Act would offer a shield of immunity.
In this case, Nesbitt left the Inn on his own power; he was not stumbling or falling down and did not give any indication that he would be an imminent menace once he left the premises. Because the Inn did not serve alcohol or allow alcohol to be served to Nesbitt, under the Dram Shop Act it had no duty to monitor Nesbitt to ensure that he was not intoxicated. We therefore reverse the Appellate Division and reinstate the trial court's summary-judgment dismissal of plaintiff's negligent-supervision cause of action against the Inn.

V.
For the reasons expressed, we reverse the judgment of the Appellate Division and reinstate the dismissal of plaintiff's claim against the C View Inn.
For reversal and reinstatement  Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS  7.
Opposed  None.
NOTES
[1] The facts presented are based on the summary judgment record before the trial court. That record includes: the deposition testimony of some of those present at the Inn on the evening in question-Frederick Nesbitt, III, Jason Kleinschmidt, Wade Dickinson, and Casey Walker; the transcript of Nesbitt's plea to vehicular homicide; police reports; an expert report; and answers to interrogatories. The entry of summary judgment is only appropriate when a review of "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment ... as a matter of law." R. 4:46-2(c). In considering the merits of a motion for summary judgment, both trial and appellate courts must view the facts in the light most favorable to the non-moving party, which in this case is plaintiff. Ibid.; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). We are guided by that principle here.
[2] Nesbitt stated at his deposition that "the bartender and waitresses ... were on me the second I walked in the door."
[3] Nesbitt pled guilty to second-degree vehicular homicide, N.J.S.A. 2C:11-5, and driving under the influence of intoxicating liquor or drugs, N.J.S.A. 39:4-50. On the homicide charge, Nesbitt was sentenced to a five-year prison term subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. At the time of the accident, a person was guilty of driving under the influence if his BAC was 0.10% or greater. See L. 2001, c. 12, § 1. Thus, Nesbitt's BAC was almost twice the then-legal limit. In 2004, the statute was amended, and a person now can be found guilty of driving under the influence with a 0.08% BAC reading. See L. 2003, c. 314 (codified at N.J.S.A. 39:4-50(a)).
[4] Nesbitt and his mother did not participate in this summary judgment motion and are not involved in this appeal.
[5] The term "dram shop" refers to "an establishment in which liquor is served to be consumed on the premises." Mazzacano v. Estate of Kinnerman, 197 N.J. 307, 318-19 n. 7, 962 A.2d 1103 (2009) (citation and internal quotation marks omitted).
[6] The five cases cited by the Appellate Division illustrating negligent-supervision causes of action are inapposite to the present facts. Bauer, supra, 399 N.J.Super. at 81-82, 942 A.2d 882 (citing Steele v. Kerrigan, 148 N.J. 1, 689 A.2d 685 (1997); Kuehn v. Pub Zone, 364 N.J.Super. 301, 835 A.2d 692 (App.Div.2003), certif. denied, 178 N.J. 454, 841 A.2d 92 (2004); Martin v. Prime Hospitality Corp., 345 N.J.Super. 278, 785 A.2d 16 (App.Div.2001); Truchan v. Sayreville Bar & Restaurant, Inc., 323 N.J.Super. 40, 731 A.2d 1218 (App.Div. 1999); Popow v. Wink Assocs., 269 N.J.Super. 518, 636 A.2d 74 (App.Div. 1993)). Of the five cases, four deal with assaultive conduct arising inside or immediately outside the licensed premises. See Steele, supra, 148 N.J. at 7-8, 689 A.2d 685; Kuehn, supra, 364 N.J.Super. at 307, 313, 835 A.2d 692; Martin, supra, 345 N.J.Super. at 288, 291-92, 785 A.2d 16; Popow, supra, 269 N.J.Super. at 520-27, 636 A.2d 74. Of the same five cases, four involve the service of alcohol to the tortfeasor by a licensed alcoholic beverage server. See Steele, supra, 148 N.J. at 7-8, 689 A.2d 685; Kuehn, supra, 364 N.J.Super., at 307, 313, 835 A.2d 692; Truchan, supra, 323 N.J.Super. at 45, 53, 731 A.2d 1218; Popow, supra, 269 N.J.Super. at 520-27, 636 A.2d 74. One of the five involves a hotel-bar that failed to react properly to warnings that an intoxicated woman, who got drunk on its premises, was placed in physical danger when taken by a hotel guest to his guestroom. See Martin, supra, 345 N.J.Super. at 288, 291-92, 785 A.2d 16.
[7] The Inn had an "unwritten policy" of arranging for a cab drive home for a patron who appeared drunk and, if necessary, calling the police if a patron displayed "loud, aggressive behavior."