**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1732-16T2

JOSEPH R. LUPO,

    Plaintiff-Appellant,

v.

KENNETH M. THIMMEL,

    Defendant,

and

ALBERT H. WUNSCH, III, ESQ.,

    Defendant-Respondent.

_____

        Argued April 30, 2018 — Decided July 20, 2018

        Before Judges O'Connor and Vernoia.

        On appeal from Superior Court of New Jersey,
        Law Division, Somerset County, Docket No. L-
        0604-14.

        Peter A. Ouda argued the cause for appellant.

        Albert H. Wunsch, III, argued the cause pro
        se (Paul A. Krauss, on the brief).

PER CURIAM

Plaintiff Joseph R. Lupo appeals from a May 2, 2016 order denying his motion to compel an inspection of defendant Albert H. Wunsch, III's firm's computer hard drive, and a July 22, 2016 order granting defendant's motion for summary judgment and denying plaintiff's cross-motion for partial summary judgment. Plaintiff asserts the trial court abused its discretion in denying his motion to inspect the hard drive because it "was of enormous importance," erred by granting defendant's summary judgment because the court erroneously "found facts based on disputed evidence submitted and rejected expert testimony," and erred by denying plaintiff's cross-motion for summary judgment because the record shows defendant breached his fiduciary duty to plaintiff. We disagree and affirm.

Plaintiff is a certified public accountant. He was co-defendant Kenneth M. Thimmel's accountant and, in 2007, supplied Thimmel with monies for an interest in a sports memorabilia business, Classic Sports Collectibles, LLC (CSC), in which Thimmel was also a member. In 2007, Thimmel entered into a sale and leaseback transaction on his Franklin Lakes home. Defendant and his law firm represented Thimmel in the transaction.

Plaintiff alleges the transaction was undertaken to protect Thimmel's equity in the home, and was intended to secure monies plaintiff would later advance to Thimmel and CSC. In a

certification to the court, plaintiff states that Thimmel entered into the sale and leaseback transaction because he had financial issues and wanted to induce plaintiff "to invest more monies with him, which [he] did in the amount of approximately $308,047."[1] Plaintiff further certified he extended additional credit to Thimmel following the sale and leaseback transaction because Thimmel represented "there would be substantial equity in the home to secure the additional monies" and Thimmel "constantly assur[ed] [him]" the sale and leaseback "would guarantee that."

Thimmel later declared bankruptcy and identified plaintiff as a creditor. The Bankruptcy Trustee initiated an adversarial proceeding on Thimmel's behalf against the purchaser of the property, the mortgage company and the respective attorneys, including defendant, who represented the participants in the transaction. The complaint in the adversarial proceeding claimed the transaction was fraudulent and should be voided, and alleged the defendants acted to defraud Thimmel. The complaint also asserted a malpractice claim against defendant. The complaint was subsequently dismissed by stipulation without prejudice against defendant without any disposition on the merits.

---

[1] Plaintiff certifies that his claims in this action are limited to the monies he invested with Thimmel following the 2007 sale and leaseback transaction.

In May 2014, plaintiff filed a Law Division complaint alleging causes of action for fraud, breach of fiduciary duty, and forgery against Thimmel, and a claim of legal malpractice against defendant. By leave granted, plaintiff filed an amended complaint adding a cause of action for breach of fiduciary duty against defendant, alleging defendant represented Thimmel in the sale and leaseback transaction, and "knew or should have known that Thimmel participated in the sale[]/leaseback so that he could continue to . . . engage in a business relationship with" plaintiff. Plaintiff alleged that defendant should have known the sale and leaseback transaction was fraudulent as to him, as Thimmel's future creditor, and breached his duty to him "by participating in a transaction that was fraudulent."

Plaintiff filed a November 16, 2015 certification of merit and expert report from attorney Barry E. Levine, Esq. Levine stated it was his "opinion that [defendant] deviated from accepted standards of practice and otherwise breached his fiduciary duty to" plaintiff. Levine stated there were "numerous [E][-]mails" from defendant's office showing defendant represented plaintiff and Thimmel "together at the same time," and although defendant and plaintiff were not parties to a retainer agreement, "the correspondence and circumstances support the conclusion that [plaintiff] believed that [defendant] was representing him."

A-1732-16T2

Levine further opined that defendant "was engaged in a concurrent conflict of interest" in violation of Rule of Professional Conduct (R.P.C.) 1.7, because he represented plaintiff and Thimmel despite their ongoing business relationship, and defendant failed to make necessary disclosures to plaintiff. Levine stated defendant failed to warn plaintiff of the "risks of the transaction," and "[a]n attorney who conformed to the standard of care would not have counseled [plaintiff] to base his investment on the sale/leaseback transaction."

Levine further stated that even if there was no attorney-client relationship between plaintiff and defendant, defendant owed a fiduciary duty to plaintiff. Levine opined that defendant breached his fiduciary duty to plaintiff because although defendant "apparently advised Thimmel against the [sale and leaseback] transaction, he didn't advise [Thimmel] that [he] was engaging in a fraud."

Defendant testified at his deposition that he advised Thimmel against entering into the sale and leaseback transaction because it was "a deal that [he] found to be a mistake." He also testified that a few days before the closing, he drafted a "Waiver and Acknowledgement of Risk"[2] stating he "clearly and unequivocally

---

[2] The parties refer to the waiver as a "letter."

advised [Thimmel] against" the sale and leaseback transaction. Thimmel signed the document, and his signature was notarized by a duly licensed notary public on June 25, 2007, three days before the sale and leaseback transaction.

In April 2016, plaintiff filed a motion to compel discovery seeking an order permitting him to inspect defendant's law firm's computer hard drive. In his certification in support of the motion, plaintiff asserted "he doubt[ed] the legitimacy of the date" of the "self-serving" waiver, and inspecting the hard drive would permit plaintiff to establish when it was drafted.

Judge Thomas C. Miller entered a May 2, 2016 order and written statement of reasons denying the request and finding plaintiff failed to demonstrate "how whether this [waiver] currently exists is relevant to any of his claims against" defendant. The judge further found plaintiff's certification failed to provide a factual basis supporting his "allegation that the [waiver] was not created on the date stated," noting there must be more than a showing that plaintiff had a "suspicion or feeling that the document is not genuine before [it would] authorize an intrusion into . . . [d]efendant's hard drive."

Defendant subsequently moved for summary judgment, and plaintiff cross-moved for partial summary judgment on his fiduciary duty claim against defendant. In response to defendant's

6

motion, plaintiff admitted he never had a retainer agreement with defendant, asked defendant for any legal advice or paid defendant to render any legal advice, and that CSC neither had a retainer agreement with defendant nor paid him any legal fees. Plaintiff also admitted he was Thimmel's accountant and financial advisor, partners with Thimmel in CSC, and "knew full well about . . . Thimmel's desperate financial situation." Plaintiff admitted he introduced Thimmel to the finance company that arranged the sale and leaseback of Thimmel's home, and knew Thimmel sold his house in 2007 pursuant to the sale and leaseback transaction.

In opposition to defendant's summary judgment motion and in support of his cross-motion, plaintiff submitted a certification and relied on a supplemental certification of merit and expert report from Levine. Plaintiff asserted defendant retained a five percent ownership in CSC, and that "there was a wealth of evidence showing . . . [plaintiff] was reasonably relying on [defendant's] office to protect" his interests. Plaintiff certified that "two ex[-]employees of CSC . . . will state that [defendant] was the attorney for the company and received tickets to events and merchandise for his legal services."[3] Plaintiff further certified that had defendant advised him that the sale and leaseback

---

[3] Plaintiff never provided competent evidence to the court from the two employees confirming his assertion.

A-1732-16T2

transaction was fraudulent, he would not have "extended further credit to Thimmel" following the transaction.

Levine's supplemental certification of merit and expert report concluded defendant "was the gatekeeper for [the sale and leaseback] transaction and if there were any risks to Thimmel his attorney[, defendant,] should have advised him." Levine stated that defendant's testimony that he did not represent CSC "was contradicted by the [E][-]mail correspondence," but did not cite to any E-mails supporting his assertion. Levine further stated "there [was] no denying that the HUD was fraudulent," and that defendant "should have known that the transaction was fraudulent on many levels," and defendant's participation in the closing amounted to a deviation "from accepted standards [of] practice and" otherwise constituted a breach of his fiduciary duty to plaintiff.

Judge Miller granted defendant's summary judgment motion and denied plaintiff's cross-motion for partial summary judgment. In a detailed and well-reasoned written statement of reasons, Judge Miller determined plaintiff did not establish defendant committed legal malpractice, because the "uncontradicted evidence" showed plaintiff was not defendant's client and that, contrary to plaintiff's claim, plaintiff failed to present evidence showing defendant served as plaintiff and Thimmel's attorney "with regards

to CSC." The court noted that plaintiff admitted during his deposition that he never retained defendant as his attorney or sought legal advice from him, and plaintiff failed to produce any evidence showing defendant served as CSC's counsel.

The judge rejected plaintiff's reliance on Levine's conclusion that plaintiff and defendant had an attorney-client relationship because it was founded on purported E-mails Levine never identified. Judge Miller determined Levine's supplemental report failed to precisely indicate which E-mails or records supported his opinion, and plaintiff failed to present any "direct evidence to indicate that [defendant] received or even reviewed the [E][-]mails."

Judge Miller also found plaintiff failed to produce "any documentation showing that [d]efendant acted as CSC's attorney or . . . had an ownership interest in the company aside from an [E][-]mail originated by . . . Thimmel stating that [defendant] 'should get [five percent] of CSC.'" The judge noted that plaintiff admitted defendant was never copied on the E-mail, did not provide any evidence showing defendant "was aware of any such ownership interest," and Thimmel testified defendant declined his offer for a five percent interest in CSC. Thus, Judge Miller determined plaintiff failed to present any competent evidence defendant had an ownership interest in CSC.

9

Judge Miller granted defendant's summary judgment motion and dismissed the legal malpractice claim because plaintiff failed to present any competent evidence showing there was an attorney-client relationship between plaintiff and defendant.[4] The court concluded that the "uncontradicted evidence supports the proposition that [plaintiff] was not a client of" defendant, and there was "no credible evidence to support a proposition that [defendant] represented both [plaintiff] and . . . Thimmel with regards to CSC."

Judge Miller also determined that based on the evidence and circumstances presented, defendant did not have a fiduciary duty to advise plaintiff that, following the sale and leaseback transaction, there was insufficient equity in Thimmel's interest in his home to secure the future loans plaintiff made to him.[5] The judge determined plaintiff failed to present evidence establishing

---

[4] Judge Miller also rejected plaintiff's claim defendant violated R.P.C. 1.7, which prohibits an attorney from representing a client with whom he has a concurrent conflict of interest, because plaintiff did not present evidence establishing he was defendant's client. The judge found Levine's conclusion that defendant violated R.P.C. 1.7 by creating a conflict of interest amounted to "nothing but the expert's bare conclusions, unsupported by factual evidence or other data," and was thus an inadmissible net opinion.

[5] As noted, plaintiff's claims against defendant are based on monies he loaned to Thimmel following the sale and leaseback transaction.

that defendant "had a duty to advise [plaintiff] that . . . Thimmel no longer had an interest in his real estate holding . . . to secure the loan transactions that [plaintiff] continued to make with . . . Thimmel" following the sale and leaseback transaction.

Judge Miller observed the evidence showed plaintiff knew about the sale and leaseback transaction, and "understood he could not secure any further loans by a lien on Thimmel's former property," because plaintiff received an almost $200,000 payoff from the transaction for monies he had previously loaned Thimmel, and then discharged a mortgage he had on Thimmel's property securing those loans.  Judge Miller found plaintiff introduced Thimmel to the buyer's finance company, "arranged for the transaction, was the primary beneficiary of the transaction, and . . . admit[ted] that he understood the nature and ramifications of the transaction."  Judge Miller concluded "no duty can be imposed upon [defendant] to advise [plaintiff] of facts and circumstances that [plaintiff] knew or should have known existed." In addition, there was no direct evidence showing defendant was actually aware plaintiff continued to loan money to Thimmel following the transaction, and defendant denied having such knowledge.

Judge Miller also determined that even if defendant had such a duty, "no reasonable jury could determine" that defendant's

failure to warn plaintiff caused plaintiff harm, because plaintiff's own actions following the transaction constituted an intervening cause of harm.[6] The judge found the evidence showed plaintiff never sought or received advice from defendant concerning the post-transaction loans, plaintiff made the loans without investigating the status of Thimmel's ownership of, or equity in, his home, plaintiff never sought post-transaction liens on the home when the loans were made, and the loans made by plaintiff to Thimmel constituted separate and independent transactions that superseded any action or inaction on defendant's part concerning the sale and leaseback transaction. The court determined that no reasonable jury could conclude that plaintiff's alleged damages resulting from Thimmel's default on the post-sale and leaseback loans were a result of defendant's purported breach of any alleged duty.

Following the court's entry of the order granting defendant's summary judgment motion and denying plaintiff's cross-motion, the court conducted a bench trial on plaintiff's claims against Thimmel

---

[6] We note that although the trial court granted defendant's summary judgment motion and dismissed all claims against him with prejudice, the court also denied defendant's motion for summary judgment on statute of limitations grounds without prejudice. This determination is of no moment here because we affirm the court's dismissal of the complaint with prejudice on the merits.

and entered final judgment against him in the amount of $245,473.77. This appeal followed.

Plaintiff presents the following arguments for our consideration on appeal:

POINT I

THE COURT ABUSED ITS DISCRETION IN DENYING THE MOTION TO INSPECT THE HARD DRIVE.

POINT II

SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED TO [] DEFENDANT.

POINT III

THE COURT SHOULD NOT HAVE DENIED PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BASED ON [DEFENDANT'S] FIRM['']S BREACH OF ITS FIDUCIARY DUTY.

When reviewing an order granting or denying summary judgment, we apply the same standard as the trial court. State v. Perini Corp., 221 N.J. 412, 425 (2015) (citing Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013); Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007)). In considering a motion for summary judgment, "both trial and appellate courts must view the facts in the light most favorable to the non-moving party, which in this case is plaintiff." Bauer v. Nesbitt, 198 N.J. 601, 605 n.1 (2009) (citing R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009).  Issues of law are subject to the de novo standard of review, and thus the trial court's determination of such issues is accorded no deference.  Kaye v. Rosefielde, 223 N.J. 218, 229 (2015) (citations omitted).

We have carefully considered the record and plaintiff's arguments supporting his contention the court erred by granting defendant's summary judgment motion and denying his cross-motion, find they are without merit sufficient to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), and affirm the court's order substantially for the reasons set forth in Judge Miller's detailed and well-reasoned written decision.

Because we have determined the court correctly granted defendant's summary judgment motion, it is unnecessary to determine whether the court erred by denying plaintiff's request for inspection of defendant's law firm's computer hard drive. Plaintiff claims he was entitled to the inspection because it may have shown the notarized waiver signed by Thimmel was prepared at a time later than defendant contended, but makes no showing

A-1732-16T2

resolution of that issue is material to the court's disposition of the summary judgment motions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION